# THE BOARD OF SUPERVISORS OF LOGAN COUNTY

*v.*

# THE CITY OF LINCOLN.

1. CONSTITUTIONAL LAW—*division of county revenues.* The section in the charter of the city of Lincoln providing for a division of the taxes collected and paid into the county treasury, between the county and city, in a certain proportion, is not unconstitutional, and may be enforced at law.

2. LIMITATION—*as to municipal corporation.* As respects public rights or property held for public use upon trusts, municipal corporations are not within the operation of the Statute of Limitations, but in regard to contracts or mere private rights, the rule is different; and such corporations may plead and have pleaded against them the Statute of Limitations.

3. Where county authorities receive and hold money under a public law for the benefit of a city, and for a specific object, the obligation of the county exists by law, and bears no analogy to a right springing out of a contract, and in a suit by the city to recover the money due it, the county can not avail itself of the Statute of Limitations.

4. COUNTY REVENUE—*omission of officers to divide.* Where a statute makes it the duty of the county judge and mayor of a city to divide and apportion the county revenue between the county and city in a certain way, the duty imposed is merely ministerial, and on a neglect of those officers to perform the duty, the amount due the city may be ascertained in any other mode that satisfactorily establishes the fact.

5. SAME — *taxes collected under special acts.* Special taxes collected under an act of the legislature for the purpose of building a jail, erecting bridges and other public improvements, are county taxes, within the meaning of section 88 in the charter of the city of Lincoln, providing for their apportionment between the city and county.

6. ESTOPPEL—*application to municipal corporations.* The doctrine of *estoppel in pais* is applicable to municipal corporations. But mere non-action of their officers to assert a right is not sufficient to work an estoppel.

There must be some act done influencing the action of another, which renders it inequitable to permit the corporation to stultify itself.

7. PRESUMPTION—*that taxes collected were uniform.* Where a deficiency in the revenues of a county is afterwards supplied, it will be presumed, in the absence of proof to the contrary, that it was done in some mode so that the entire property of the county contributed its just share.

APPEAL from the Circuit Court of Logan county; the Hon. LYMAN LACEY, Judge, presiding.

This was an action of assumpsit, by the city of Lincoln against the Board of Supervisors of Logan County. The material facts appear in the opinion. The city recovered judgment for $7657.62.

Mr. T. T. BEACH, and Messrs. ROWELL & HAMILTON, for the appellant.

Messrs. BEASON & BLINN, Mr. E. G. HUDSON, and Mr. C. I. FORSYTHE, for the appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the Court:

The 88th section of the amended charter of the city of Lincoln, under which this suit was brought, provides an accurate account shall be kept of all expenditures made for county purposes, in which shall be charged all expenditures for county purposes, except for the making and repairing of roads and highways, and the building and repairing of bridges in the county, with the city ratably to the county, and the city of Lincoln, in proportion to the taxes collected for county purposes within the city, and paid into the county treasury by each, respectively, and the surplus of all such taxes shall be divided between the city and the county in proportion to the amount of taxes collected for county purposes within the city and in the county without the city, and paid into the county treasury by each, respectively. The declaration contains only the common counts, to which were pleaded, first, the general issue, and second, the Statute of Limitations.

The fact a similar provision in the charter of the city of

Springfield has been the subject of construction in this court, relieves us from any discussion of most of the points made in defense of this action. That construction is conclusive of the right of·plaintiff to recover.

In the first case, that of *The City of Springfield* v. *Power*, 25 Ill. 187, it was declared it was within the power of the legislature to pass the statute, the whole purpose of the section then under consideration being "merely to apportion the public revenue collected in Sangamon county; such parts of it as are collected in the city of Springfield of the property there situated, and such portions as are collected in the county outside of the city limits, between the two corporations."

In the second case, that of the *Board of Supervisors* v. *Springfield*, 63 Ill. 66, it was held, the 5th section of article 9 of the constitution of 1848, requiring that taxes levied shall be uniform in respect to persons and property within the jurisdiction of the body imposing the same, is not contravened by that section of the city charter that required an apportionment of county taxes, upon a certain basis, between the county of Sangamon and the city of Springfield.

All similar objections taken in the case at bar are controlled by the principles of the cases cited, and the question raised need not be further discussed.

A few points, however, have been made in this case that are not answered by the reasoning in the former decisions. One is the question that arises on the plea of the Statute of Limitations. Our understanding of the law is, that, as respects all public rights, or as respects property held for public use, upon trusts, municipal corporations are not within the operation of the Statute of Limitations, but in regard to contracts or mere private rights, the rule is different, and such corporations, like private citizens, may plead or have pleaded against them the Statute of Limitations. *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 38; Dillon on Mu. Cor. 2 Vol. sections 532, 533.

The funds involved in this controversy are in the nature of trust funds, held by the county for a specific object, defined by

a public law, and hence the Statute of Limitations is not available as a defense to the action.    The obligation created by the statute bears no analogy to a right springing out of a contract on the part of the county in favor of the city.

Among the duties imposed upon the county judge and the mayor of the city by this section of the statute is, to ascertain the proportion of taxes to be paid to the city under its provisions.    Such duties are ministerial, and the omission to perform them ought not to prejudice the rights of the injured party.    Should these officers neglect their official duties in this regard, and fail to apportion the taxes, it is apprehended the amount may be ascertained in any other mode that satisfactorily establishes the fact.

Recognizing, as we do, the doctrine of *estoppel in pais* may have its application to municipal corporations, still there is nothing in the suggestion the plaintiff is estopped to assert this claim simply by the non-action of the city officers.    It would be a pernicious doctrine to establish that public rights of municipalities could be cut off by the neglect of the appointed officers for an unreasonable time to enforce them. Before the doctrine of estoppel can be invoked, there must have been some positive acts by the municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done.    But mere non-action of its officers is not sufficient to work an estoppel as against a municipal corporation.

There can be no doubt the special taxes levied and collected under the act of the legislature, "for the purposes of building a jail, erecting bridges, and other public improvements," are county taxes, within the meaning of this section of the city charter, and hence the subject of division between the county and city as other taxes collected for county purposes.    Although collected under a special law, they are none the less county taxes.

Evidence introduced establishes the fact that in several years the whole amount of taxes collected for county purposes did

not equal the expenditures, not including roads and bridges. Hence the proposition insisted upon, that, by the judgment of the court below, the city obtains its share of all taxes in each, when there is a surplus, but when there is a deficiency, the county outside of the city is obliged to make up such deficiency, thus making the tax unequal. Nothing appears in the exhibits or evidence in this record that sustains this theory of the case. How the deficiencies that occurred were made up, whether in the same or in some subsequent year, does not clearly appear. It may be, for anything proven, they were made up in some way so that the property within the city limits was made to bear its just proportion of the burden. What resources the county had for supplying the deficiencies that occurred in the several years, or when or how the same was done, is not established by the evidence. Nothing to the contrary appearing, it will be presumed it was done in some mode so that the entire property of the county, as well that inside as that outside of the limits of the city, contributed its just share.

The judgment is warranted by the law and the evidence, and will be affirmed.

*Judgment affirmed.*