## THE COUNTY OF PIATT

*v.*

## LEVI GOODELL.

*Filed at Springfield November 26, 1880.*

1. TAX TITLE—*to swamp land belonging to a county.* Swamp land, so long as it belongs to a county, is not subject to taxation, and a purchaser of such land at tax sale, who was at the time of his purchase chargeable with notice under the recording laws of the title of the county, acquires no title by his purchase.

2. LIMITATION—*how far applicable to municipal corporations.* Municipal corporations, in all matters involving mere private rights as contradistinguished from public rights, strictly so called, are subject to limitation laws to the same extent as private individuals, but in all matters involving strictly public rights, they are not subject to the limitation laws as such; but in this class of cases courts occasionally, under special circumstances which would

make it highly inequitable or oppressive to enforce such public rights, interpose by holding the municipality estopped from so doing.

3. The limitation law of 1839 applies to counties, so that where a party acquired claim and color of title to a tract of swamp land belonging to the county, at tax sale, and paid all taxes thereon for seven successive years under such claim and color of title, coupled with possession for the same period, it was *held*, that the county was barred.

4. SAME—*what is color of title.* A tax deed made under a sale of swamp land, which was exempt from taxation, as belonging to a county, as well as the deed from such purchaser, constitutes color of title under the Limitation act of 1839.

5. SAME—*evidence of bad faith.* Constructive notice of a better title of record is not, within the meaning of the Limitation law, evidence of bad faith on the part of the holder of color of title.

WRIT OF ERROR to the Circuit Court of Piatt county.

Mr. S. R. REED, Mr. A. EMERSON, and Mr. C. A. TATMAN, for the plaintiff in error:

Section 8 of the Swamp Land act (1 Purple's Stat. 700) provides that the Auditor shall make a list of the swamp lands of the county and forward the same to the county clerk of the proper county, which list shall have the force and effect of patents issued for school lands.

The land in controversy being swamp land and included in the Anditor's list, was exempt from taxation so long as it remained unsold by the county. Sec. 3 of the Revenue act of 1853; 2 Purple's Stat. 921.

Whether the Statute of Limitations will run against a county or other municipal corporation, we cite the following authorities: *Logan County* v. *City of Lincoln*, 81 Ill. 156, Dillon on Mun. Corp. vol. 2, secs. 532, 533.

These lands, by the Swamp Land act, are vested in the county for public use, and are held in trust for the purposes declared in the act.

Messrs. LODGE & HUSTON, for the defendant in error:

The statute makes a tax deed *prima facie* evidence that the real estate conveyed was subject to taxation at the time it was assessed, etc. Rev. Stat. 1877, p. 851, sec. 224.

This statute clearly relieved Goodell from the necessity of showing that the land was subject to taxation.

The acts of the county officers in listing this land for taxation, returning it as delinquent, taking judgment and selling it, are positive acts which induced Goodell's grantor to expend his money in purchasing the same, and the constant receipt of taxes by the county officers for over ten years makes it inequitable to allow the county to stultify itself by retracting what its officers have done, so that the county is estopped to deny that the land was subject to taxation. *Logan County* v. *City of Lincoln,* 81 Ill. 156.

There is a clear and well recognized distinction taken between lands held by a county or city in trust for the public use, or dedicated for a particular purpose, and those purchased by such bodies for their own exclusive use. As to the first, the Statute of Limitations does not run, while as to the latter it does. *City of Alton* v. *Illinois Transportation Co.* 12 Ill. 58; *Logan County* v. *City of Lincoln,* 81 id. 156; 2 Dillon on Munic. Corp. secs. 532, 533.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

This cause is brought here upon the following agreement:

It is agreed between the plaintiff and defendant in the above entitled cause, that on the trial of this cause in said court the plaintiff introduced in evidence the certified list of the Auditor of the State of the swamp lands of Piatt county, showing title in said county to the west half of the southeast quarter of the north-east quarter of section No. eight (8,) township No. twenty (20) north, range No. six (6,) east third principal meridian, in said county of Piatt, and then rested its case.

That thereupon the defendant introduced a judgment of the probate court of said county against said lands for nonpayment of taxes, then offered in evidence a tax deed to L. J. Bond for said lands and a deed from Bond to Goodell, and

tax receipts for eight successive years previous to the commencement of suit, and showed possession for the same time.

The plaintiff objected to the introduction of all the foregoing because there was no evidence offered showing that said land had been sold by plaintiff under the Swamp Land act, and no certificate from the Auditor of State directing the county clerk to enter the same for taxation.

It is agreed that all the proceedings through which the tax title was acquired were regular on their face.

The court found the issues for the defendant, and rendered judgment against the plaintiff and in favor of the defendant.

The questions submitted to this court are:

1st. Can a valid tax title be obtained as against a county for swamp land without showing that the land had been sold by the county under the Swamp Land act?

2d. Does the Statute of Limitations run against a county in favor of a party holding color of title for swamp land, acquired in good faith, and showing payment of taxes and possession for eight years before suit?

Bond, through whom the defendant claims, was, at the time of his purchase, chargeable with notice, under our recording laws, of the county's title to the premises in question, and he is conclusively presumed to have known that so long as they belonged to the county they were not subject to taxation, and could not legally be sold for taxes. It follows, therefore, that he acquired no title to the premises by virtue of his tax deed.

But the tax deed was color of title, under the Limitation act of 1839. And since it is well settled, by numerous decisions of this court, that constructive notice of a better title of record is not, within the meaning of that act, evidence of bad faith, and the actual good faith of the transaction is not at all questioned in the agreement upon which this case is submitted, it follows that the tax deed was color of title made in good faith, and so also was the deed from Bond to the defendant.

The real and vital question in this case would then seem to be, can the title of lands belonging to a county, which are not held for some public use or trust, and which the county may at pleasure sell and convey without any breach of duty, be defeated by possession and payment of taxes under color of title made in good faith, for a period of seven years, in the same manner as if they belonged to an individual?

The solution of this question necessarily leads to a consideration of the more general inquiry, whether municipal corporations—using the term in its most extended sense—like individuals, are subject to general statutes of limitation.

*Nullum tempus occurrit regi* is one of the ancient maxims of the common law, and is the natural offshoot of the maxim, *Rex non potest peccare.* Inasmuch as by the latter maxim the king was regarded as incapable of doing a wrong, it necessarily followed that negligence or laches could not be attributed to him, and it was held therefore, at an early day, that the king was not subject to statutes of limitation, except when expressly named, and such has been the law from that period up to the present time.

The same doctrine has generally been recognized by the courts of this country, both national and State, as applicable to the federal and State governments. And the same general doctrine, with certain limitations, has by the same courts, with more or less uniformity, been extended to other municipal and *quasi* municipal corporations, such as cities, towns, counties, etc. It is clear, from the authorities, that these latter corporations have not the same immunity from the operation of limitation laws and the effects of unreasonable delays in the enforcement of their rights, or the performance of their duties, as the federal and State governments have.

In *City of Alton* v. *Illinois Transportation Company*, 12 Ill. 38, which was an action of ejectment, brought by the city to recover a strip of land constituting a part of the public landing, it was objected, among other things, that the action was barred by the Limitation act of 1835, requiring certain real actions to

be brought within seven years after possession taken of the premises sought to be recovered. But the objection did not prevail, the court holding that the city did not fall within the provisions of that act, and in disposing of the question it was there said:

"Without stopping to inquire whether the rule that laches is not imputable to the public, or that time does not run against the government, applies to inferior municipal incorporations, such as towns, cities and counties, as well as to the State, we entertain no doubt that this statute has no application to the case before us. Whatever title to these public grounds may be vested in the city, she has not the unqualified control and disposition of them. They were dedicated to the public for particular purposes, and only for such purposes can they be rightfully used. For those purposes the city may improve and control them, and adopt all needful rules and regulations for their management and use; but she can not *alien* or otherwise dispose of them for her own exclusive benefit; nor are they subject to the payment of her debts. At most she but holds them in trust for the benefit of the public. The right to the use of the property is not limited exclusively to the citizens of Alton, but the citizens of the State generally have an equal right with them in the appropriate enjoyment of the dedication. This is not like the case of property purchased by the city for her own exclusive use, which she could dispose of at her pleasure. Whether an adverse possession would run against property thus held we do not now propose to inquire; but we entertain no doubt that this statute does not apply to this case, and that the rights of the public in this dedication have not been forfeited by non-user or barred by adverse possession."

It will be perceived that the court, in the case just cited, expressly refused to consider the general question, whether inferior municipal corporations, such as towns, cities and counties, are exempt from the operation of general statutes of limitation, and that the decision is placed upon the express

ground that the land in controversy was held by the city in trust for the use of the people of the State generally, and not for the exclusive use of the people of the city, and that by reason of its being thus held, the city had no authority or power to sell the same, or use it for other purposes than those for which it had been dedicated. Nevertheless the case, in view of the grounds upon which it is placed, is an authority in favor of the proposition that there is a well founded distinction between cases where the municipality is seeking to enforce a right in which the public in general have an interest in common with the people of such municipality, and cases where the public have no such interest, otherwise that decision could not be sustained upon the grounds stated. But the distinction in question does not rest alone upon that case. It is recognized in numerous well considered cases, and by the ablest elementary writers.

Even in cases where it is conceded that the rights involved are such as the public in general have an interest in common with the people constituting the municipality, the authorities do not universally hold that such rights can not be lost under peculiar circumstances by non-user or adverse possession. But cases of this character rest rather upon the doctrine of estoppels *in pais* than upon limitation laws strictly so called. The mere non-user or adverse possession alone would not have this effect. In all such cases some other element must enter into them, which would render it inequitable to enforce the rights.

Dillon, in his work on Municipal Corporations, after discussing the subject under consideration in the light of the numerous decisions bearing upon it, sums up his own conclusions in the following language: "Municipal corporations, as we have seen, have, in some respects, a double character,— one public, the other, (by way of distinction,) private. As respects *property not held for public use,* as streets, commons, etc., and as respects contracts and rights of a private nature, there is no reason why such corporations should not

fall within limitation statutes and be affected by them. For example, in an action on contract or for tort, a municipal corporation may plead, or have pleaded against it, the Statute of Limitations. But such a corporation does not own and can not alien public streets or places, and no laches on its part or that of its officers can defeat the right of the public thereto; yet, there may grow up in consequence private rights of more persuasive force in the particular case than those of the public. It will perhaps be found that cases will arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public; but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author can not assent to the doctrine that, as respects public rights, municipal corporations are within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger of recognizing the principle of an estoppel *in pais*, as applicable to such cases, as this leaves the court to decide the question, not by mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require."

The general conclusions reached by this distinguished author and jurist, as here laid down, have been substantially recognized in a number of adjudicated cases by this court. See *Logan County* v. *City of Lincoln*, 81 Ill. 156; *Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 id. 25.

In Wait's Actions and Defenses, vol. 7, page 234, the author says, in general terms: "The privilege of the maxim *nullum tempus occurrit regi* does not apply to any of the subdivisions of the State, such as counties, cities or other municipal corporations, or to any corporations private or public." If this statement, in its application to municipal corporations, is confined to cases involving mere private rights, we understand it to announce a correct principle of law, but it must be accepted with this limitation.

Upon a careful consideration of the authorities, the better opinion would seem to be that municipal corporations, in all matters involving mere private rights, as contradistinguished from public rights, strictly so called, are subject to limitation laws to the same extent as private individuals. On the other hand, in all matters involving strictly public rights, they are not subject to the limitation laws as such. But, in the latter class of cases, courts occasionally, under special circumstances which would make it highly inequitable or oppressive to enforce such public rights, interpose by holding the municipality estopped from doing so.

Testing the case before us by the principles here announced, the plaintiff had no right to recover. The right of the county to the tract of land in controversy was not of that public character as exempted it from the operation of the Limitation act of 1839.

The county had a perfect right to sell or otherwise dispose of the same at pleasure, at any time before the statute run. The public generally had no interest in it in common with the citizens and tax-payers of that county.

Upon the agreed state of facts, we are of opinion that the judgment of the court below was proper, and it is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE WALKER, dissenting:

I am unable to concur in the conclusion reached by the majority of the court. I hold that a municipality can not be barred by the Statute of Limitations, nor can such a body be estopped from asserting its claims to property situated as was this tract of land. It was held for the benefit of the people of the county, and was in trust for the benefit of the public, and hence is not subject to either the bar of the statute or to estoppel. The statute has appropriated these lands to a particular purpose, and after that purpose is answered, the surplus is under the control of the county. There is nothing to show that the special purpose has been

completed, or that the property was not still held for the special purpose, and hence the presumption is that the trust still continued.

Again, this land was specially exempted from taxation, and was therefore illegally sold for taxes, and being illegally sold, no taxes could be legally assessed, and if not legally assessed, the purchaser did not pay all taxes legally assessed, as required by the 7th section of the Limitation law under which the bar is claimed. The 8th section of that statute expressly excepts land held as this was from the operation of the bar provided for in the 6th and 7th sections, the latter of which is relied upon in this case to defeat a recovery.

Being exempt from taxes and from the Limitation law, the bar can not be invoked.

Mr. Justice SHELDON concurs in this dissent.