588   APPELLATE COURTS OF ILLINOIS.

VOL. 72.] Dickerson v. Mayor and Aldermen of City of Le Roy.

# Henry C. Dickerson v. Mayor and Aldermen of the City of Le Roy.

1. CITIES AND VILLAGES—*Application of the Statute of Limitations and the Doctrine of Equitable Estoppel.*—The statute of limitations does not run in favor of an individual and against a municipality holding a street for the general public, but the doctrine of equitable estoppel from abandonment or non-user may be invoked.

2. ESTOPPEL—*Where City Has Allowed Private Person to Use Street.* —Where municipal authorities consented to the erection of structures in a public street and acquiesced in their remaining there for twenty-four years, and where the owners of such structures were induced to believe that they would not be interfered with by the public authorities, and so believing expended a large sum of money on such structures, the court holds that under the circumstances it would not be equitable or just to order such structures removed, and that the doctrine of equitable estoppel applies.

Mandamus.—Appeal from the Circuit Court of McLean County; the Hon. THOS. F. TIPTON, Judge, presiding. Heard in this court at the May term, 1897. Affirmed. Opinion filed December 2, 1897.

OWEN T. REEVES and H. G. REEVES, attorney for appellant.

It is *prima facie* the duty of the mayor and city council, in a city where, by law, they are given power over streets, to keep the streets free from obstructions. City of Bloomington v. Bay, 42 Ill. 503. The city of Le Roy, incorporated under the general law, has power over the streets, and is required " To prevent and remove encroachments or obstructions upon the same." Hurd's Statutes 1895, 265, clause 10.

This power having been given the city council, and the general law providing that the mayor shall preside at its meetings, and in case of a tie, shall give the casting vote, the writ was properly directed to the mayor and city council in their official capacity, instead of the city of LeRoy, requiring them to do the particular thing specified in the writ, which appertains to their office and duty. Man-

damus was an appropriate remedy. People ex rel. v. City of Bloomington, 63 Ill. 207; Chicago & A. R. R. Co. v. Suffern, 129 Ill. 274.

City authorities can not appropriate a street, so a sidewalk can not be laid down upon or adjoining the boundary line of the street. Carter v. City of Chicago, 57 Ill. 283.

A village can not use a " square " dedicated to the use of the citizens generally, as a site for a town or village hall. Village of Princeville v. Auten, 77 Ill. 325.

Although a city holds the fee to its streets, yet it is in trust for the use of the public for the legitimate purpose of a street. It has no power to sell or lease or otherwise appropriate it to other purposes; nor can a street be so obstructed as to deprive the public of its use as a highway. Stack v. City of East St. Louis, 85 Ill. 377.

The erection by a city of a water tank in a street, and the erection and operation of a steam engine in connection therewith, even for the purpose of supplying the city and its residents with water, is not a use to which the street may legitimately be put. City of Morrison v. Hinkson, 87 Ill. 587.

A city has no power to so appropriate a part of a street, as that the public can not use the part of the street so appropriated. The public has a right to the use of a street for its entire width. It is no answer on the part of a person obstructing permanently a part of a street, to be able to say that the part of the street not obstructed furnishes free transit and is of sufficient width. If the city authorities of Le Roy think the street is wider than necessary, it might, by proper proceedings, perhaps, vacate a part of the street, but while it remains unvacated the public is entitled to the unobstructed use of the whole street. Stephani et al. v. Brown, 40 Ill. 428; Smith et al. v. McDowell, 148 Ill. 51.

A municipality holding the streets in trust for the public, and having no authority to convey or divert them for other uses, it would seem inevitably to follow, that they can have no power to grant to individuals rights or easements in the street which in any way interfere with the

duty of preparing them for public use, for it is obvious that if such rights may be granted, then the practical use of the streets may become so burdened with private rights as to place it beyond the pecuniary ability of the city to discharge its duty to the public with reference to them. It is not consistent to say that the city owes a duty to the public and yet that it may voluntarily place it beyond its power to discharge that duty. City of Quincy v. Jones, 76 Ill. 242; Smith v. McDowell, 148 Ill. 51.

A city has no power to grant or permit an exclusive use of a street or any part thereof to a private individual or corporation. St. Louis A. & T. H. Railroad Co. v. City of Belleville, 122 Ill. 376; The People ex rel. v. Walsh et al., 96 Ill. 248; 2 Dillon on Mun. Corp. (3d Ed.), Sec. 688.

A municipal corporation holds the legal title to the grounds dedicated for streets, in its governmental capacity, in trust for the public use, and therefore can not invest private parties with any rights inconsistent with that use, and the statute of limitations will not therefore run in favor of a private party to bar the rights of the public. Lee et al. v. Town of Mound Station, 118 Ill. 304; City of Quincy v. Jones, 76 Ill. 231; Dillon on Mun. Corp., Secs. 529–533.

The primary purpose of a street is for the public use and it is not within the power of a municipality to divert the street to permanent private uses. But every obstruction of a street is not illegal, such as a necessary and temporary obstruction incident to its use or repair, the temporary deposit of earth or material in improving adjoining lots, and excavations under the street authorized by the municipality, if temporary, and reasonably necessary; the test in all such cases being that the interruption shall be reasonably necessary and shall not be continued for an unreasonable time. 2 Dillon on Mun. Corp. 581 *et seq.;* Angell on Highways, Chap. 6; Wood on Law of Nuisances, 262 *et seq.*

But the extension of an obstruction to the free use of all or part of the street for the exclusive benefit of the lot owner, and to remain permanently, is a purpresture and is

Dickerson v. Mayor and Aldermen of City of Le Roy.

*per se* a public nuisance, which the town council of Leroy had no power to license, or by its refusal to remove it, maintain.   Wood on Nuisances, 283 *et seq.;* Smith et al. v. McDowell, 148 Ill. 67;  Pettis v. Johnson, 56 Ind. 139.

The permanent encroachment upon a street unauthorized directly by the legislature and the creation of purpresture therein, which obstructs the free and uninterrupted passage of the public is, as a matter of law, a public nuisance.   The matter of inconvenience to the public, or that sufficient of the street may remain unobstructed to still accommodate the public travel, can not be considered.   The trustee of the public municipality is charged with the duty of keeping and maintaining the streets, in all their parts, open and unobstructed, and in a reasonably safe condition for the public use.   Smith et al. v. McDowell, 148 Ill. 68.

As showing that a city can not grant or permit the use of any part of a street for private purposes, it is held that where power is given to a city to vacate a street this power is to be construed in view of the purposes for which the municipality is invested with control of the streets, and its right of vacation is to be exercised only where its authorities, in the exercise of their discretion, determine the street is no longer required for the public use or convenience, and they have no power to vacate a strip of land along and in a public street for the sole purpose of enabling a private person to occupy such strip of the street with a permanent structure, appurtenant to his building abutting upon the street.   Smith et al. v. McDowell, 148 Ill. 51.

ROWELL, NEVILLE & LINDLEY, attorneys for appellees.

Where the public have long withheld the assertion of control over the streets, and private parties, by the acts of the public, or those representing the public, have been induced to believe the streets abandoned by the public, and on the faith of that belief, and with the acquiescence of those representing the public, have placed themselves, by making structures or improvements in the streets, in a situation where they must suffer great pecuniary loss if those

592     APPELLATE COURTS OF ILLINOIS.

Vol. 72.] Dickerson v. Mayor and Aldermen of City of Le Roy.

representing the public be allowed afterward to allege the street was not abandoned, the doctrine of equitable estoppel may be applied.   Chicago, Rock Island & Pacific Railroad Co. v. City of Joliet, 79 Ill. 25.

Open and exclusive adverse possession by private parties and complete non-user by a city for more than twenty years estops a city from claiming the property where the circumstances would make it inequitable for the city to claim that there had been no abandonment.   City of Peoria v. Johnston, 56 Ill. 45; Village of Winnetka v. Prouty, 107 Ill. 218; Village of Auburn v. Goodwin, 128 Ill. 57; Hewes v. Village of Crete, 68 Ill. App. 305.

Long acquiescence in a boundary line estops the parties from denying its correctness.   Kerr v. Hitt, 75 Ill. 51.

While municipal corporations are not, as respects public right, within ordinary limitation statutes, still the principal of an *estoppel in pais* applicable in such cases as this, leaves the court to decide the question not by mere lapse of time, but by all the circumstances of the case, and to hold the public estopped or not, as right and justice may require. Chicago R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 25; Chicago & N. W. R. R. Co. v. The People ex rel., 91 Ill. 251.

It is the general doctrine that municipalities under the power of exclusive control of their streets may allow any use of them consistent with the public object for which they may be held.

Building vaults under the streets, alleys and sidewalks is permissible, and a permit, when accepted and acted on by the holder by making costly improvements required, will constitute a contract between the city and the holder of the permit irrevocable at the mere will of the city.   Nelson v. Godfrey, 12 Ill. 20; Gridley v. City of Bloomington, 68 Ill. 47; Chicago Mun. Gas L. & F. Co. v. Town of Lake, 130 Ill. 42; Gregsten v. City of Chicago, 145 Ill. 451.

The owners of lots bordering upon streets have a right to make a reasonable and proper use of the same.   What may be deemed such reasonable use depends much upon the local situation and public uses.   O'Linda v. Lothrop, 21 Pick. 292; Underwood v. Carney, 1 Cush. 285.

It is a legitimate use of streets to grant to persons or companies the right to erect poles and wires to supply electric light to consumers. Dickson v. Kewanee Electric Light & Motor Co., 53 Ill. App. 379.

MR. JUSTICE GLENN DELIVERED THE OPINION OF THE COURT.

This is a proceeding by mandamus to compel appellees to remove certain obstructions placed on Center street in the city of Le Roy in McLean county. Center street runs east and west and Buck street north and south through the city of Le Roy. The I. B. & W. Railroad was built and opened through the city of LeRoy in 1870. The railroad enters the city from the northwest and passes a little south of east across the city, running diagonally over the intersection of Center and Buck streets. In 1870 there was a large flouring mill situated on the southwest corner of block 23 in the city of Le Roy. The north line of Center street is the south boundary line of block 23, and the east line of Buck street is the west boundary line of block 23. The flouring mill was eighteen to twenty feet east of the east line of Buck street, and thirteen to fourteen feet north of the north line of Center street. Barnum & Keenan purchased this mill and block 23, upon which it was situated. Desiring to enlarge the flouring mill so as to fit it for a grain elevator as well as for milling purposes, they in 1872 applied to the then town board for permission to put posts a short distance in the street to support the proposed addition to the second story of the mill, and also for permission for the railroad company to run a spur track along the south side of the mill. Both permits were granted. Barnum & Keenan after procuring permission built an extension on the south side of the mill sixteen feet wide and forty-eight feet long, and eleven feet above the level of the street, supported by five posts, twelve by twelve in size and standing some two and one-half feet south of the north line of Center street at the west and some six feet at the east end. In this extension are four cribs or bins, twelve by sixteen feet, for storing grain, with a capacity of about three thousand

594    APPELLATE COURTS OF ILLINOIS.

VOL. 72.] Dickerson v. Mayor and Aldermen of City of Le Roy.

bushels to the bin.    Upon the completion of these bins by
which this part of the mill was converted into an elevator,
the railroad company built a spur track from their main line
under the bins, and eastward two-thirds of the way across
the block, making room for two or three cars beyond the
elevator.    Owing to a decline in Center street going east
the grade of the railroad track at the east end is higher than
the traveled part of the street, four or five feet, and bends a
little to the south, so that at the east end it is some six feet
south of the north line of Center street.    Under the bins on
the railroad track is a set of railroad scales to weigh cars.
The making of these improvements cost about three thou-
sand dollars.

By permission of the town board of the then town of
Le Roy, Barnum & Keenan, in 1873, erected a platform
scale at a cost of from six to eight hundred dollars at the
southwest corner of the intersection of Center and Buck
streets.    The scales extend into the street about seven feet,
are on a level with the surface of the street, and are covered
by a roof, supported by four posts.    Charly & Payne
bought their property of Barnum & Keenan and now own it.
The business houses are on Center street and about one-
fourth of a mile east of the mill.    The width of Center and
Buck streets is sixty-six feet.

The obstructions complained of are the elevator bins and
the five posts supporting them, placed over the north line of
Center street at the west end two and one-half feet, and at
the east end six feet, and the platform scales at the south-
west corner of the intersection of Center and Buck streets,
extending into Center street seven feet from the south line.
The former were placed where they now are in 1872, and the
latter in 1873.    As to the facts in this case there is no sub-
stantial disagreement.    There is but one question of law
arising in the case.    The authority and control of the mayor
and aldermen over the streets and alleys of the city of Le
Roy, with the restrictions and limitations stated in the
authorities cited by appellant are admitted.    They, how-
ever, are not applicable to the facts and circumstances in this
case.

While the statute of limitations does not apply in cases of this character, the defense of equitable estoppel from abandonment or non-user may be invoked. This is the defense invoked in this case by the appellees. The Supreme Court, as an illustration of this doctrine in discussing the question, have said in Lee v. Town of Mound Station, 118 Ill. 317: " It is true we have held where the public have long withheld the assertion of control over streets, and private parties have been by the acts of those representing the public, induced to believe the streets abandoned by the public, and on the faith of that belief, and with acquiescence of those representing the public, they have placed themselves, by making structures or improvements in the street, in a situation where they must suffer great pecuniary loss, if those representing the public be allowed afterward to allege that the street was not abandoned, the doctrine of equitable estoppel may be applied."

It is further said with reference to this doctrine : " There is no danger in recognizing the principle of an *estoppel in pais* as applicable to such cases as this, as it leaves the courts to decide the question, not by the mere lapse of time, but by all the circumstances of the case, to hold the public estopped or not, as right and justice may require." Jordan v. City of Chenoa, 166 Ill. 530; Chicago, R. I. & P. R. R. Co. v. City of Joliet, 79 Ill. 25; County of Piatt v. Goodell, 97 Ill. 84; Village of Winnetka v. Prouty, 107 Ill. 218; Village of Auburn v. Goodwin, 128 Ill. 57; City of Peoria v. Johnston, 56 Ill. 45.

In this case the municipal authorities consented to the erection of the structures now complained of where they now encroach on the street, more than twenty-four years ago, and have acquiesced in their remaining all this time. No one has made any objections to their being there, until just before the commencement of this suit, complaint was made by appellant. The owners of these structures were in good faith induced to believe, and did believe they would not be interfered with by the public authorities, and erected the elevator, and the spur of the railroad running into the mill,

at an expense of about $3,000, and the platform scales at a cost of $700. If those representing the public are compelled to remove these structures and improvements, the appellees must suffer great pecuniary loss. It seems to us from all the facts and circumstances in this case it would not be equitable or just to do it, and the doctrine of equitable estoppel should be applied to this case.

The judgment of the Circuit Court is affirmed.