## THE CITY OF SULLIVAN *et al.*

### *v.*

### AMANDA M. TICHENOR.

*Opinion filed April 17, 1899.*

1. STREETS AND ALLEYS—*acceptance of dedicated street need not be formal.* No formal act or ceremony is necessary to the public acceptance of a dedicated street, nor is it necessary that there should be any record of such act to vest the public with the easement.

2. SAME—*acceptance includes entire width if street is open.* Where the acceptance of a platted street by the public is not expressly limited and the entire street is open, such acceptance must be taken as including the full width of the street as shown by the plat, although the regular travel is confined to a narrower strip.

3. SAME—*mere adverse possession by adjoining owner does not bar city's right.* In the absence of any element of equitable estoppel, the mere adverse possession of part of a public street by an adjoining owner, however long continued, does not bar public right.

4. SAME—*when city is not estopped to assert its rights in public street.* That an adjoining owner for many years had fenced in a portion of a public street, along which fence a sidewalk was built by parties other than the municipal authorities, does not estop the city from building a sidewalk on the true line, where no valuable or lasting improvements were made in the enclosed space.

APPEAL from the Circuit Court of Moultrie county; the Hon. W. G. COCHRANE, Judge, presiding.

RAY D. MEEKER, City Attorney, and MEEKER & MEEKER, for appellants.

J. R. & WALTER EDEN, for appellee.

Mr. JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellee owns and resides upon the south-east quarter of block 10, in Kellar's addition to the town (now city) of Sullivan. There is a strip of land six feet wide and one hundred feet long running east and west between the south line of said south-east quarter of block 10 and an old wooden sidewalk built in Water street. The city provided by ordinance for building a new brick sidewalk on this strip of land along the south side of said block 10, and appellee filed her bill in this case against the city, the mayor and the members of the council to enjoin the building of the same. By her amended bill she alleged that she and those under whom she claims had been in peaceable possession of said strip of land and claiming to own the same up to the north line of said old sidewalk, for more than twenty years, and that the city had never owned or been in possession of the same. The city, by its answer, claimed the strip as a part of Water street by virtue of a dedication to the town of Sullivan, for the benefit of the public, by William Kellar, owner of the land. The issue made was referred to the master in chancery, who took the evidence and reported that Kellar's addition was platted in 1850; that nothing appeared of record or in evidence showing whether the street was accepted; that defendants had never been in possession of the strip; that complainant and those under whom she claimed had been in possession since 1869 and that she had been in possession since 1888, and that the plat had never been accepted. He concluded that the equities were with complainant. Objections to this report were overruled, and they were filed as exceptions and again overruled by the court. A decree was entered in accordance with the prayer of the bill.

William Kellar made a survey and plat of the addition to the town of Sullivan on May 23, 1850, which was acknowledged before a justice of the peace and recorded

August 5, 1850. Water street was one of the streets of the town sixty feet wide, and by this plat it was continued eastward south of said block 10, including forty-five feet in width south of said block from the lands of said William Kellar, and the balance was taken from William Patterson's land adjoining it on the south. The master found that there was no acceptance of the dedication up to the south line of the block as platted and that this strip of six feet was not accepted. There is no doubt or question that the rest of the street was accepted. The facts upon which this conclusion rested are as follows: Before and at the time when the addition was laid out there was a public road leading into the town from the east, along the route where the street was laid out, on lands of William Kellar and the adjoining owner on the south, and there was a fence on each side of this road. Kellar's land was brush land and his fence along the road was a rail fence, about on the line to which complainant now claims and about six feet south of the line of block 10.. When the addition was laid out, and before any lots were sold, Kellar took away this fence. The road was the main road into the town, and continued to be in constant and general use. The premises remained in that condition, without any fence or other obstruction or encroachment upon the public right, for several years.

We do not think that these facts justify the conclusion that there was no acceptance of the entire street as dedicated. An acceptance of the street as dedicated to the public might be evidenced by user. No formal act or ceremony was necessary to an acceptance, and it was not necessary that there should be any record of such an act by which the public would be invested with the easement. In fact, it is not questioned that there was, in this case, an acceptance of all the street except this six feet, and unless there is something to show that the acceptance was limited and that some part of the offered way was rejected, it should be deemed an acceptance of

the whole as offered.   It is true that the public did not
travel, generally, over the strip in question, but there
was no hindrance to their doing so if the occasion re-
quired.   One who holds possession under a conveyance
is taken to be in possession of the whole tract conveyed,
and where, as here, the acceptance is not limited and the
entire premises are open to the public, the acceptance
should be taken to include the entire width conveyed by
the plat.   The circumstances of this case are not the
same as in the case of *Hewes* v. *Village of Crete*, 175 Ill. 348,
where the public authorities refused to accept a part of
the premises dedicated, which were in the adverse pos-
session of individuals claiming it as their property.  The
acceptance in that case was limited, and there was a re-
fusal to accept a portion, and such portion was, in fact,
held adversely to the public.  We think the exception to
this finding should have been sustained.

   The only remaining ground upon which the decree is
sought to be sustained is the adverse possession of com-
plainant.   A few years after the addition was laid out,
purchasers of lots along the street erected a fence on the
line where the rail fence had been, encroaching six feet
upon the street.   There was a blacksmith shop in the
vicinity where there was no fence, and people drove up to
the shop, but it is uncertain from the testimony whether
it was on the premises now owned by complainant.   At
any rate, the fence was maintained by complainant and
those under whom she claims from 1869 until it was taken
away, eight years before this suit.  Complainant's father-
in-law moved on the property in 1869 and lived there
until his death, in 1882.  He deeded the property to her
and she lived there after 1880.   The fence was kept up
until about eight years ago, when she took it away to
let the land lie open to the street, not desiring a fence in
front of her property.  About the time the fence was first
built there was a school house erected about two hundred
feet east of the property.  The old wooden sidewalk was

then built along the new fence, either by the property owners or by the school directors, in connection with private donations, and it has since been renewed in the same place. So far as appears, the town or city had nothing to do with the location or building of the sidewalk, and took no action about it until it was proposed to build the new sidewalk on the true line. The question is whether such adverse possession will prevent the city from claiming the strip.

It is well established that the Statute of Limitations does not run against a municipal corporation in respect to property held for public use. (*County of Piatt* v. *Goodell*, 97 Ill. 84; *Lee* v. *Town of Mound Station*, 118 id. 304; *Greenwood* v. *Town of LaSalle*, 137 id. 225.) Municipal authorities cannot grant a street for any purpose inconsistent with the public use, and as prescription presupposes a grant, it cannot exist in such a case and an individual cannot acquire a prescriptive right for any private use. (*City of Quincy* v. *Jones*, 76 Ill. 231; *Logan County* v. *City of Lincoln*, 81 id. 156.) If complainant could gain no right by prescription or under the Statute of Limitations, to say that mere possession for any length of time could invest her with right or title to the premises would be to give her the benefit of the Statute of Limitations under some other name. There would be no substantial difference between saying that she has acquired the premises by adverse possession and saying that the public has lost them by the same possession. In all the cases to which we have been referred as sustaining the right of one who has trespassed upon a public street to retain the premises so taken there has been some other element than the mere fact of possession, and the conditions have been such that it was necessary to estop the municipality to prevent injustice and wrong. The doctrine of equitable estoppel may be applied to municipal corporations where justice and right may require it. (*Chicago, Rock Island and Pacific Railroad Co.* v. *City of Joliet*, 79 Ill. 25; *Chicago and*

*Northwestern Railway Co.* v. *People*, 91 id. 251; *Martel* v. *City of East St. Louis*, 94 id. 67.) A municipal corporation can no more profit by fraud upon property owners than an individual, and may be estopped by conduct. In *Jordan* v. *City of Chenoa*, 166 Ill. 530, it was said that the Statute of Limitations does not run against municipalities holding streets and alleys for the general public; but in that case Jordan had not only been in possession of the alleged alley but he had a house standing on part of it, and the city was held to be estopped from asserting title. There are other cases to the same effect where parties had changed their position relying upon some act or conduct of the municipality. In this case there is nothing but the naked fact of possession by the complainant and non-user for a long time by the public authorities.

We do not see any equity in complainant's position. She testified that when she was told the city was going to build the sidewalk on the proposed line she told the mayor she was willing if other people were going to build on the line. She mentioned persons in other places in the town who had encroached on the streets, and she did not want to yield up these premises unless they yielded what they had taken. She had no improvements on the strip, and there was nothing on it but some rose bushes and a cherry tree. She would suffer no substantial loss by a surrender to the public. The public authorities had nothing to do with the old sidewalk and did not build it or locate it where it was built. We do not find anything in the case from which an equitable estoppel would result. As complainant could acquire no prescriptive right in the property held in trust for the public use we must conclude that the decree was wrong.

The decree is reversed and the cause is remanded to the circuit court, with directions to dismiss the bill.

*Reversed and remanded.*