(No. 15578.—Reversed and remanded.)

CARL A. MELIN, State's Attorney, *et al.* Plaintiffs in Error, *vs.* COMMUNITY CONSOLIDATED SCHOOL DISTRICT No. 76 *et al.* Defendants in Error.

*Opinion filed April 14, 1924—Rehearing denied June 10, 1924.*

1. PLATS—*dedication may be established without proving title to land platted.* Where none of the original owners, nor any succeeding grantees or devisees, are parties claiming rights, a dedication may be established by a survey and plat alone, the words on the plat showing an intention to dedicate; and evidence of title to the land platted is not required to be produced.

2. SAME—*acceptance of dedication may be implied from user.* An acceptance of a dedication may be implied from user by the public for the purpose for which the land was donated, and, where beneficial to the public, only slight circumstances are necessary to indicate such acceptance.

3. SCHOOLS—*school districts are quasi municipal corporations— powers.* School districts are *quasi* municipal corporations or involuntary political or civil divisions of the State, created purely as auxiliaries to aid in the general administration of the State government, and their powers are limited to those expressly granted, or such as result, by necessary implication, from those granted.

4. MUNICIPAL CORPORATIONS—*general rule as to when courts will hold municipality estopped.* In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights.

5. SAME—*city cannot appropriate a public park for location of public buildings.* A municipality cannot, without statutory authority, appropriate any part of a public park to the erection of buildings for administrative purposes, such as for a town or city hall, court house or school house.

6. ESTOPPEL—*doctrine cannot be applied to authorize erection of school house in a public park.* The fact that a school is beneficial to the public is without force as an argument tending to show power in the school district to erect a school house in a public park, and as there is no authority in the statutes for such right, it can not be created by implication, on the ground of estoppel.

7. SAME—*a municipality, as well as State, may be estopped.* A municipal corporation, when acting in its private as contradistin-

guished from its governmental capacity, may be estopped, and cases may arise of such a character that right and justice will require that equitable estoppel may be asserted against the State when it is acting in its governmental capacity.

8. SAME—*when city or State may be estopped in governmental capacity.* Before the doctrine of estoppel can be invoked against a city or the State government there must have been some positive acts by the municipal or State officers which induced the action of the adverse party and which render it inequitable to permit the corporation to stultify itself by retracting the action of its officers, but mere non-user or adverse possession will not, alone, avail against the corporation or the public.

9. SAME—*estoppel in pais is applied against the public only to prevent injustice or fraudulent results.* The doctrine of estoppel *in pais* applies to the public only to the extent that it leaves the courts to decide, from all the circumstances, whether or not the public should be estopped in the interests of right and justice, the doctrine being applicable only as a means of preventing injustice or fraudulent results.

10. SAME—*when public is not estopped to enjoin erection of school building in public park.* The public is not estopped to enjoin the erection of a new school building in a public park which was dedicated by plat and accepted by user, notwithstanding a portion of the park has been used for a school building for many years, where there is no evidence that the public had abandoned that portion of the park, and where its use and occupancy by the school district have not been adverse.

DUNN, J., dissenting.

WRIT OF ERROR to the Circuit Court of Henry county; the Hon. CHARLES J. SEARLE, Judge, presiding.

CARL A. MELIN, State's Attorney, and STURTZ & EWAN, (JOHN T. KENWORTHY, of counsel,) for plaintiffs in error.

T. W. HOOPES, JAMES H. ANDREWS, MARTIN E. O'CON-NOR, ANDREW OLSON, and ERMAN KING, for defendants in error.

Mr. JUSTICE CARTER delivered the opinion of the court:

The bill of complaint in this case as it was finally amended was filed in the circuit court of Henry county by the State's attorney on the relation of four residents, tax-

payers and electors of the village of Andover, to enjoin the construction of a school house on the public square of the village. The court dismissed the bill for want of equity, and the complainants have brought this writ of error.

There is no controversy about the material facts. A plat of the village of Andover was filed in the recorder's office of Henry county on March 7, 1842, which was annexed to a certificate of Arba M. Seymour, county surveyor of Henry county, dated May 17, 1838, that the town of Andover was laid off on the north half of section 17 and the south half of section 8, in town 15, north, range 2, east of the fourth principal meridian, for Ithamar Pillsbury, Eben Townsend and Edward A. Mix, trustees for the New York Association, and that the annexed map and the references contained in the certificate were a copy of the town of Andover, in Henry county, State of Illinois. The document also bore the certificate of two of the county commissioners of Henry county that the plat was a true and correct plat of the town of Andover, together with their acknowledgments and the signatures and acknowledgments of the trustees named in the surveyor's certificate. The land platted was divided into forty-nine blocks of ten acres each, each block being subdivided into four lots, which were numbered, except the center block of the plat, which was marked "Public square." Two lots north of the public square were marked "Public buildings," and four other lots farther north in the tract were marked, "Appropriated to the literary institute." One lot in the east end of the plat and one in the west end were marked "Burying ground." For some years after the recording of the plat the public square was known as "the commons" and was used for pasturing cows, and there was no special exercise of authority over the public square by any official. In 1860 school district No. 3, which then included the land covered by the plat and other territory, erected a two-story frame school house in the southwest portion of the tract, in which a public common school

has been continuously maintained since that time and has been the only school in the community. The school grounds were fenced off from the rest of the tract, the fence was repaired, renewed and kept up, the school house was repaired from time to time, and a furnace was put in, trees were planted and the grounds were cared for by the school directors with funds of the school district. In 1895 the town of Andover was incorporated under the laws of the State as a village. In re-numbering the school districts of the county, school district No. 3 became school district No. 76, and in 1919, by consolidation with other school districts, became Community Consolidated School District No. 76, and since its organization has maintained the school in Andover. In 1920 Community High School District No. 195, also including the village of Andover, with other territory, but not co-extensive with the boundaries of the existing district, was organized. The ordinary course was pursued in the calling of an election, selection of a school house site, authorizing the issuance of bonds, and entering into a contract for the erection of a building on grounds 358 by 338 feet in dimensions in the southwest corner of the square. On September 12, 1921, and before the contract was made to erect the school building and before the bill herein was filed, a notice was served by property owners of the village on Community Consolidated School District No. 76 and on Community High School District No. 195 and its officers, and on the contractor whose bid had been accepted, that district No. 195 had no right on the square, and that the proposed attempt to build a school thereon was in violation of the terms of the grant of said land to the inhabitants of the village. This action is to enjoin the construction of the school house, and there is also a prayer for a mandatory order directing the restoration of the grounds to their condition, as nearly as possible, prior to the beginning of the work mentioned. The portion of the public square fenced and used for school pur-

poses constitutes about two and one-half acres, and the remainder of the tract has continued to be employed for other purposes. A lock-up was built outside the school enclosure. Both the enclosed and the unenclosed parts of the public square were used for public gatherings.

The master in chancery to whom the matter was referred concluded, as a matter of law, from the facts shown, that the plat having been recorded more than eighty years previous to the hearing, without any evidence to show revocation or opposition by anyone, the same was dedicated for the public use prior to 1860; that the erection of the building in that year was for a purpose other than contemplated by the dedicators; that the school district acquired no title, but the right to maintain and use the building erected on the land was permissive, only, and that the proposed construction of the new building was contrary to the purpose of the dedicators. He concluded that the public has the right to prevent the construction of the building and that the equities of the cause are with the plaintiffs in error. The master recommended that a decree be entered enjoining the further construction of the school building. Objections to the report were sustained, and the court decreed a dissolution of the injunction, directing that the bill be dismissed for want of equity.

It is first contended that the trustees for the New York Association had no authority to dedicate the tract marked "Public square," and that there could be no acceptance by the public such as would constitute the land a public square by dedication. Evidence of title to the land platted is not required to be produced. (*Waugh* v. *Leech,* 28 Ill. 488.) A dedication may be made by a survey and a plat alone. (*Guttery* v. *Glenn,* 201 Ill. 275.) The words on the plat indicate the intention of the dedicators. (*City of Jacksonville* v. *Jacksonville Railway Co.* 67 Ill. 540.) A dedication of the kind here in question can be established in any way by which the intention to dedicate may be evinced. (*Godfrey*

v. *City of Alton,* 12 Ill. 29.)   Since evidence of title was not required to be produced, we think it is immaterial that the three persons for whom the survey was made were designated as trustees for the New York Association without a power of attorney being exhibited defining their powers. Several named individuals designated as members of the New York Association, as such members and in their individual capacities, quit-claimed all their interests in and to the land in Henry county recited to have been purchased in that county by three named persons for the association, to Elihu L. Mix, and the latter conveyed the land to the three named trustees, to "hold, use and employ the said premises, with the appurtenances, for such time and in such manner as in their judgment, or a majority of them, shall be most advantageous for the said New York Association and shall most conduce to the welfare and prosperity of the said village of Andover, * * * to let or lease or absolutely to sell or dispose of the same or any portion thereof," and to execute and deliver good and sufficient deed or deeds for the same.   The surrounding lots were sold with reference to the plat.   It could very well be considered as conducing to the welfare and prosperity of the village of Andover to set aside a public square of ten acres out of the 640 acres platted for sale.   The plat, as well as the public square, we think has been sufficiently recognized to excuse further proof than that which has been furnished.   None of the original owners, nor any succeeding grantees or devisees, are claiming any right here or asserting that the dedication was not effective for the purpose intended.   The only interest asserted upon the part of the school district is by reason of the alleged abandonment or estoppel.   An acceptance of a dedication may be implied from user by the public for the purpose for which the land was donated, and, where beneficial to the public, only slight circumstances are necessary to indicate such acceptance.   *Rose* v. *Village*

*of Elizabethtown,* 275 Ill. 167; *Alden Coal Co.* v. *Challis,* 200 id. 222.

The bill alleges that "the public, for whose use and benefit the said public square was dedicated, as aforesaid, did seventy years ago or more from time to time beautify and ornament said public square by planting trees therein, many of which have grown and become large and of considerable. value and are still standing in the public square." The answer admits the tract has trees on it, but avers that the trees "do not ornament or beautify to any great extent, because for many years weeds have been permitted to grow to great height on said tract, which destroyed the beauty and use of that part of said tract not used and occupied for school purposes." The testimony shows there were soft-maple trees planted on the public square, some more than fifty years ago and others later. The testimony does not show much effort at beautifying the park or otherwise making it attractive for park purposes beyond the planting of the trees, but the uses heretofore shown indicated that it could be used and was used by the public for many different public purposes.

In matters involving strictly public rights the courts do not interpose to hold the municipality estopped except under special circumstances which would make it highly inequitable or oppressive to enforce such public rights. (*County of Piatt* v. *Goodell,* 97 Ill. 84; *State* v. *Illinois Central Railroad Co.* 246 id. 188; *Phillips* v. *Leininger,* 280 id. 132.) School districts are *quasi* municipal corporations. They are involuntary political or civil divisions of the State, created purely as auxiliaries of the State to aid in the general administration of the government. They are limited to those powers expressly granted, or such as result, by necessary implication, from those granted. (*People* v. *Board of Education,* 255 Ill. 568.) A municipality cannot, without statutory authority, appropriate any part of a public park to the erection of buildings for administrative purposes, as, for town or city halls, court houses, school houses, etc. (3 Dil-

lon on Mun. Corp.—5th ed.—sec. 1096, p. 1750.) The fact that the school might be beneficial to the public cannot avail as an argument against the lack of power in the school district to do the thing sought to be done. (*Boseley* v. *Oak Park District*, 275 Ill. 92.) If the school district (either No. 3 or No. 76) did not originally have the right to enter into a contract with the community high school district to permit the use of a certain part of the public square for the erection of a school house it did not acquire that right through estoppel, where no substantial rights have been acquired, solely because it may have built and used another building, the right to which had never been questioned by the public. We find no authority anywhere for the erection of school buildings in public squares or parks under the laws of Illinois, and certainly that right should not be extended, by implication, on the ground of estoppel. *Leeper* v. *Hersman*, 58 Ill. 218.

A municipal corporation, when acting in its private as contradistinguished from its governmental capacity, may be estopped. (*City of Chicago* v. *Sexton*, 115 Ill. 230.) Cases may arise of such a character that right and justice will require that equitable estoppel may be asserted even against the State when acting in its governmental capacity. (*State* v. *Illinois Central Railroad Co. supra; Logan County* v. *City of Lincoln*, 81 Ill. 156.) But before the doctrine of estoppel can be invoked there must have been some positive acts by the municipal officers (or the State) which may have induced the action of the adverse party and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done. Mere nonaction of its officers is not sufficient to work an estoppel as against a municipal corporation. (*Logan County* v. *City of Lincoln, supra.*) Neither will adverse possession, alone, avail against the public. (*Russell* v. *City of Lincoln*, 200 Ill. 511.) The doctrine of estoppel *in pais* applies to the public only to the extent that it leaves the courts to decide

the question from all the circumstances of the case, and to hold the public estopped or not, as right and justice may require. The doctrine is applicable only as a means of preventing injustice or fraudulent results. *Shirk* v. *City of Chicago,* 195 Ill. 298; *City of Chicago* v. *Sawyer,* 166 id. 290; see, also, *People* v. *City of Rock Island,* 215 Ill. 488.

While some of the earlier decisions in applying the principle of estoppel *in pais* have said that the public is estopped or not, "as right and justice may require," the very term "estoppel" is indicative of something preventive and not something creative. It is not a principle by which to promote acts of positive justice by an act of creation, but, as the later decisions intimate, is a principle invoked to prevent injustice and fraud, so that while it might well be argued that the public should be estopped from doing any act by which the school district would suffer pecuniary loss, in applying the principle of estoppel it is unnecessary to go to the extent of saying that because the public may not cause the school district to suffer pecuniary loss the doctrine of estoppel may be applied to give the district a creative right to contract with another school district in order that greater positive advantage may accrue to both. This is not the province of estoppel where the public is concerned. In all the cases which we have read where the public has been held to be estopped, it has been established by the evidence that by not asserting the doctrine the parties "would suffer a substantial loss." (*City of El Paso* v. *Hoagland,* 224 Ill. 263; *City of Peoria* v. *Central Nat. Bank,* 224 id. 43; *Jordan* v. *City of Chenoa,* 166 id. 530.) Where there has been no "substantial loss" the doctrine of estoppel has not been held applicable to the municipality. (*City of Sullivan* v. *Tichenor,* 179 Ill. 97.) A municipal corporation, no more than an individual, cannot profit by its wrongful acts. It may be estopped by its own conduct. *City of Sullivan* v. *Tichenor, supra.*

The doctrine above announced applies in this case. It applies equally as much to a public square as to a street, and it applies to protect a school district equally as much as a private individual. But in order to apply this doctrine there must clearly appear to be an abandonment by the municipality or public and an adverse holding by the school district. In this case there has been a continued occupancy and use of the land by the school district for more than sixty years, but there is no showing that this use was adverse to the claims of the public. As a matter of fact, the land enclosed for school purposes has for many years also had upon it a band-stand and a speaker's stand, and apparently the portion of the public square used for school purposes has at the same time been used for the general purposes to which a public square might be put, although at various times application has been made to the school directors for permission to use the enclosure for other than school purposes.

Under the circumstances we do not find that the portion of the public square here involved has been abandoned by the public or that its use and occupancy by the school district have been adverse to the public. Taking this view, we must therefore hold that the community consolidated school district had no right to enter into an arrangement, agreement or contract with the community high school district by the terms of which the latter should be permitted to occupy and use the land for school purposes.

The decree will be reversed and the cause remanded, with directions to the trial court to enjoin the further construction of the proposed school building.

*Reversed and remanded, with directions.*

Mr. JUSTICE DUNN, dissenting.