[No 19210.   Department One.—February 21, 1894.]

# CITY OF LOS ANGELES, APPELLANT, *v.* KASPARE COHN ET AL., RESPONDENTS.

PUBLIC STREET—POSSESSION—ABANDONMENT BY PUBLIC.—An uninterrupted possession of land claimed by a city as part of a public street, for the period of forty or fifty years, may indicate an abandonment by it of all right to the land as a public highway.

ID.—ESTOPPEL IN PAIS—ERECTION OF BUILDINGS WITH CONSENT OF CITY. The principal of *estoppel in pais* may be applied against the public in exceptional cases where justice and right require it; and where, before the erection of buildings by the possessor of land claimed by the city as part of a public street, the city instructed its agent to investigate and report to the council its rights to the land, who investigated and reported that the city had no claim or title, which report was received, placed on file, and entered in substance upon the minutes of the proceedings of the council, whereupon the possessor of the land erected a large and valuable building upon the land, and no claim was made and no action thereafter taken by the city for a period of twenty years, the city is estopped from bringing an action for the recovery of the land as part of the street, and from obtaining a judgment which would result in a destruction of the property.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying a motion for a new trial.

The facts are stated in the opinion of the court.

*C. McFarland*, for Appellant.

*Stephen M. White*, and *Houghton, Silent & Campbell*, for Respondents.

GAROUTTE, J.—Plaintiff brings this action to recover the possession of a small tract of land which lies at the intersection of Spring and Main streets, in the city of Los Angeles, and which is covered by a portion of the building known as Temple Block.   It is claimed by the city that this land is a part of a public street.   At the conclusion of the trial, the court made its findings of fact to the effect that defendants were the owners of the land at the time the action was commenced, and that they and their grantors and predecessors had been in

the active and exclusive occupation and possession of the property for more than forty years. Upon these findings judgment went for the defendants, and this appeal is prosecuted from that judgment, and from the order denying a motion for a new trial.

Owing to the views we entertain upon another branch of the case, we do not find it necessary to discuss in detail the sufficiency of the evidence to support the finding of the trial court as to the character of the possession and the period of time of the possession of these defendants and their grantors and predecessors over this tract of land. Upon examination of the evidence, we think it established to a certainty that this possession had been continuous and exclusive for almost fifty years. This is something unusual in litigation of the present character, and is a feature of the case to which we would attach considerable importance, if the consideration of the element of possession were necessary to support the title of defendants to the land. An uninterrupted possession of forty or fifty years is full of meaning, even against a municipal corporation, and in some states such conduct upon the part of the city would conclusively indicate an abandonment by it of all right to the land as a public highway.

In 1871 Temple began the erection of a block of buildings upon a certain parcel of land, which included upon the north end thereof the strip in dispute. The contemplated structure was to be three stories in height, of great value, and extended over this tract of land. The foundations being laid, it was reported to the city council by the street commissioner that Temple, the owner, was encroaching upon the public street with his building, and upon an order of the council the matter was referred to the city attorney for investigation. Subsequently, as shown by the minutes of the proceedings of the council, the city attorney made a lengthy report to that body, wherein in detail he reviewed the merits of the claims of both parties, and in conclusion held that Temple was the owner of the land, and was justified in

erecting the building as he had begun it.   This report was ordered received and placed on file, and a full synopsis thereof was entered upon the minutes of the board.   Thereupon the building was at once erected to completion, and nothing further was ever done by the city in the premises until the present action was brought, twenty years later.   Stephen C. Foster, who had been a former alcalde of the pueblo, and later a mayor of the city, and a witness in whom it appears all parties reposed confidence, testified that at the time the city attorney was investigating the rights of the city to this land, he heard Temple, the owner of the building, tell the attorney that he wanted to do what was right, "he wanted the matter fixed at once"; and the witness also stated that his impression was that Temple said he would leave it to Howard (city attorney), and act upon his opinion as to where the north line should be placed.

Various questions pertaining to title and dedication arise in the case, and those questions have been fully argued by counsel.   We shall not discuss them, but rest our decision upon the history of this piece of realty, as disclosed by the facts we have quoted from the record. If it be conceded that the legal title to this land has always been in the city, that fact alone avails the plaintiff nothing, for an assertion of its claims upon that ground has been barred by the statute of limitations for many years.   A dedication of the property as a public highway resulting from the filing of a certain map among the public records of the county, in the year 1849, forms the basis of plaintiff's cause of action, and conceding the filing of this map to have had all the force and effect claimed for it, and that dedication *ipso facto* resulted therefrom, yet we think plaintiff's conduct has been such that, whatever merit its claim may have possessed years ago, there is no merit in it now. While municipal corporations do not own their public streets, and while the laches of municipal officers cannot defeat the rights of the public in those streets, yet individuals have some rights which, in the exercise of

common justice, the municipality must respect. Its conduct towards a citizen, pertaining to the boundary line of one of its highways, may be such that it would be a violation of every principle of right and morals to allow it to recede from the stand taken, or the agreement made.

The foregoing principle is well illustrated and strongly put by Dillon in his work upon Municipal Corporations, section 675, wherein it is said: "It will perhaps be found that necessities sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public; but, if so, such cases will form a law unto themselves, and do not fall within the legal operation of the limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle, but there is no danger in recognizing the principle of an estoppel *in pais,* as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere process of time, but upon all the circumstances of, the case, to hold the public estopped or not, as right and justice may require." The author cites many cases to support the text, and upon examination of these citations we find the principle recognized and approved, especially by the decisions of the Illinois court. In the later case of *Simplot* v. *Chicago etc. Ry. Co.,* 16 Fed. Rep. 360, the text from Dillon is quoted with approval, and Judge Shiras says: "In the latter cases (referring to cases like the present one) the courts may apply the doctrine or principle of estoppel, and by means thereof, where justice and right demand it, prevent wrong and injury from being done to private rights." This doctrine is also directly declared in the recent case of *Crocker* v. *Collins,* 37 S. C. 327, and while it is not for us to say whether or not the facts of that case were sufficient to justify an application of the principle of etsoppel *in pais* as against the public, yet the

law is there well declared as follows: "We think, therefore, that mere adverse possession for the statutory period of a street or alley in a town which is a public highway cannot confer a title, but where such possession is accompanied with other circumstances which would render it inequitable that the public should assert its rights to regain possession, then, upon the principle of estoppel, a party may be protected against the assertion of right by the public, in order to prevent manifest wrong and injustice. For example, when the party, either under an honest conviction of right has taken possession of a portion of one of the streets or alleys of the town, and expended his money in erecting buildings thereon without interference on the part of the public, these, or perhaps other, circumstances connected with adverse possession for the statutory period may afford good grounds for estoppel."

To our knowledge there is nothing to be found in the decisions of this court opposed to the doctrine laid down in the text we have quoted from Dillon's work on Municipal Corporations, while in the case of *Fresno* v. *Fresno Canal and Irrigation Co.*, 98 Cal. 182, the principle was stated and incidentally approved. The question being a new one in this state, and a most important one, we will content ourselves with an application of it to the facts of the present case, and not attempt to promulgate any general rule by which every case invoking this doctrine may be weighed and measured. If we concede the existence of the principle of estoppel *in pais* against the public in certain exceptional cases, then this case is rightly decided, for this is an exceptional case. If this character of estoppel may be pleaded where justice and right require it, then it may be successfully pleaded here, for justice to these defendants demands it. There are limits beyond which even a city in representing the rights of the public may not go, and we think the city in the present action has gone beyond those limits. If the city had expressly agreed by its officers with defendants' grantors,

even in parol, that a certain line should constitute the boundary line between the street and the grantor's property, and upon the faith of such agreement the grantors had erected a block of buildings flush with the line of the street as agreed upon by all parties, it would be a hard law that would allow the city to repudiate that agreement, and destroy the grantor's property. No court should countenance such a thing, and an estoppel *in pais* will rise up in the pathway of a city to bar it and its principal, the people, from the commission of such a grievous wrong; and to give the acts of this city a very limited meaning we think its conduct in the present case at least equivalent to an oral agreement as to the location of the true boundary line of the street.

We again detail the facts. Before the buildings were erected, with a knowledge and concurrence of the owner, the city instructed its agent to investigate and report to the council its rights in the land. The agent did investigate, and reported that the city had no claim or title. This report was received, placed on file, and entered in substance upon the minutes of the proceedings of the council. Nothing more was ever done by the city until this action was brought, a period twenty years later. Upon the reception of the report, and its filing among the records of the city, defendants' grantors at once proceeded to the erection of a large and valuable building, and there it stands at the present day. A judgment for plaintiff would result in a destruction of this property. These facts are potent in themselves, and in our researches we have found no case which may so well be termed an "exceptional case." We have found no case which with better reason should form a "law unto itself." It is a case where an estoppel *in pais* is properly plead.

For the foregoing reasons it is ordered that the judgment and order be affirmed.

Harrison, J., and Paterson, J., concurred.