Argued June 26, decided July 15, 1913.

# PORTLAND *v.* INMAN–POULSEN LUM. CO.

### (133 Pac. 829.)

**Municipal Corporations—Streets—Obstruction—Objections by City—Estoppel—Evidence—Findings.**

1.  In an action by a city to restrain the further obstruction of certain alleged streets through property owned and occupied by defendants as a sawmill, evidence *held* to sustain a finding of fact that defendants purchased the property at the invitation of the city, and on its representation that it claimed no interests or rights therein, and improved and occupied the same for a sawmill for many years without any claim on the part of the city, and that to open streets through the same would destroy plaintiff's use.

**Estoppel—Streets—Obstructions—Estoppel of City—City's Right to Object.**

2.  Defendants, being about to establish an immense sawmill plant near a slough of the Willamette River in the City of Portland, were urged by the city's authorities to do so, and the city's officers, to induce such construction, represented that the city claimed no street rights through certain platted property surrounding the slough which defendants proposed to purchase for their plant. On such representations the land was purchased by defendants in 1890 and sawmill buildings erected without reference to the existence of any streets, none of which had been graded or laid out on the ground. On November 27, 1906, the plant was destroyed by fire, and immediately thereafter defendants by the expenditure of three quarters of a million, with the knowledge of the city's officers, constructed on the same site the largest sawmill plant in the world, which they continued to operate and maintain from that time until 1908, when the city for the first time claimed the right to open streets through the property. There was no public necessity for such streets, and, if opened, they would destroy the plant. *Held,* that the city was estopped to claim the right to open streets through the property.

**Estoppel—Cities—Acts of Officers.**

3.  The statute of limitations does not run against a city's right to compel the opening of streets, but this does not prevent the city from being estopped by the conduct of its officers from opening the same.

[As to the loss of city streets by prescription or estoppel, see notes in 76 Am. St. Rep. 479; 87 Am. St. Rep. 775; 92 Am. St. Rep. 844.]

**Estoppel—Pleading—Effect.**

4.  Equity will not concern itself with the lack of technical pleading of an estoppel as such, when all the facts necessary to constitute such estoppel are pleaded, and no objection is made to the form of the pleading.

5.   Where a city's officers induced defendants to purchase certain property within the city's limits and construct and operate a large sawmill plant thereon, by representations that the city claimed no street rights through the same, the city was estopped to open streets through the property so long as it was used by defendant for a sawmill.

From Multnomah: HENRY E. McGINN, Judge.

In Bank.   Statement by MR. CHIEF JUSTICE Mc-BRIDE.

This is a suit brought by the City of Portland to restrain Inman-Poulsen Lumber Company, a corporation, R. D. Inman and Johan Poulsen from obstructing certain streets situated in what was formerly known as Stephens' Addition to the City of East Portland, which, by the consolidation of the two cities, has become a part of the present City of Portland.   The pleadings with their exhibits would occupy several hundred pages of the Oregon Reports, and are therefore omitted; it being sufficient to state that they are broad enough in their scope to cover all the contentions of the parties, and that the evidence adduced fully justified the findings of fact made by the Circuit Court.

Said findings are as follows:

"(1) That the City of Portland is a municipal corporation within Multnomah County, State of Oregon.

"(2) That the City of East Portland was incorporated by an act of the legislative assembly of the State of Oregon on the 29th day of October, 1870.

"(3) That Inman-Poulsen Lumber Company at the times mentioned in the complaint was, and now is, a corporation organized and existing under and by virtue of the laws of the State of Oregon.

"(4) That on the 8th day of June, 1869, James B. Stephens and Elizabeth Stephens were the owners and in possession of a certain portion of the James B. Stephens donation land claim, and he, the said James

B. Stephens, filed a plat of said portion and designated the same as Stephens' Addition to East Portland, and that on said plat there was shown the shore line of Stephens' slough, and on said plat there were shown certain dotted lines within the bounds of said Stephens slough.

"(5) That said Stephens slough as shown upon said plat or map was surrounded by a high bank about 50 feet above the level of the water in said slough on the north bank, and 35 feet above the level of the water on the south bank thereof; and on said map or plat the portion of said slough containing water was shown with blue coloring, the same as the portion shown of the Willamette River, which likewise was shown with blue coloring, and the same was and is recorded in Book 1 at page 529, Records of Deeds of Multnomah County, Oregon.

"(6) That the premises hereinafter described were situated within the bounds of the City of East Portland after its incorporation.

"(7) That among the other various powers granted to the City of East Portland were the following: Article IV, Section 1, subdivision 3, enumerating the powers of the board of trustees: 'To prevent and remove nuisances. 11th. To remove all obstructions from the public highways or streets.'

"(8) That on July 30, 1885, there was passed by the City of East Portland Ordinance No. 501, defining the duties of street commissioners, which provide, 'The street commissioner shall keep an office at the council chamber at which he shall attend at least once each day to receive and act on such petitions and business as may be brought before him; he shall keep himself thoroughly informed of the condition of all streets and highways, alleys, etc.; he shall see that no obstructions are allowed to remain upon the streets, alleys or sidewalks; he shall cause the removal of all nuisances on the streets and public grounds,' which ordinance was in force and effect from said date to the time of the

consolidation of the cities of East Portland and Portland.

"(9) That the City of East Portland in 1885 established all street grades at that time, and did not establish any street grade or grades through any of the premises described in the complaint or answer herein, being the property in controversy, but established grades at that time all around the said premises so described. That neither the City of East Portland, nor the City of Portland, have ever established any street grades within the bounds of the premises described in the answer in this proceeding in paragraph 1 thereof. That the said City of East Portland never accepted, acknowledged, or claimed that any streets existed within the bounds of the premises described in said answer, and that the said City of Portland never accepted the dedication of any street within the bounds of said premises, and never intimated or claimed that any streets so existed until the month of September, 1907.

"(10) That on the 15th day of February, 1888, James B. Stephens conveyed to George W. McCoy and M. M. Clinton all the property in controversy lying west of Grand Avenue, which was then known as Fifth Street, together with other property, and that at said time said premises contained part of Stephens slough, as heretofore stated, which was an impassable slough about 20 to 30 feet in depth below the surface of the water and from 30 to 50 feet from the surface of the water to the top of the banks surrounding said slough, and the high ground lying to the south of said slough was rough ground, covered with stumps, trees, logs, and thick underbrush; and said grantees thereupon began to clear the same, and cleared the said tract south of said slough, irrespective of and without reference to or consideration of any street or streets, and surrounded the premises lying south of said slough and west of Grand Avenue, shown on the map of Stephens' Addition as blocks 29, 32, 49, 50, 31, and parts of 32 and 51 with a high board fence, and erected in the south-

western portion of said inclosed premises a grandstand and conducted baseball games thereon, and used the said premises as a baseball park, and excluded the public therefrom otherwise than by the payment of an admission fee, and said baseball park and said fence included that portion shown on said maps as streets within the bounds of said baseball park.

"(11) That in the year 1889, J. T. Stewart was the mayor of the City of East Portland, and appeared anxious to encourage the establishment of manufacturing plants on the east side of the Willamette River and in the City of East Portland, and that he delivered a message to the council requesting the encouragement of enterprises within the bounds of East Portland, and that before and about said time said defendants R. D. Inman and Johan Poulsen were looking for a site upon which to locate a sawmill, and, pursuant to such message of the said mayor and the request of the city council at East Portland, Councilman Hardie, then a member of said council of East Portland, invited the said defendants R. D. Inman and Johan Poulsen to locate and establish their proposed sawmill on the east side of the river. Subsequent to said time said defendants had negotiated with George W. McCoy and Richard Clinton with a view toward locating a sawmill on the premises now occupied by the defendant Inman-Poulsen Lumber Company, and that, pursuant to the invitation and encouragement of said Councilman Hardie, the defendant Johan Poulsen in the month of August, 1889, interviewed said J. T. Stewart, who was then the mayor of said City of East Portland, and said defendant informed said mayor that he and his associates were about to acquire the said premises herein described, and that they intended to locate a sawmill upon the same, and that they intended to manufacture lumber and use the premises now occupied by them for their manufacturing plant, and requested that if said city claimed any interest or right in said premises or any portion thereof, or for the use of the public as a street or otherwise, that the same should

be vacated, and he was informed by the said mayor that the said City of East Portland did not and would not claim any of said premises as a public street or highway, except that the city claimed Fifth Street, now Grand Avenue, as a public street. That thereupon said defendant Johan Poulsen obtained legal advice as to whether the public had any rights within the premises now occupied by defendant Inman-Poulsen Lumber Company, and was assured that no public rights existed therein. That said defendants Johan Poulsen and R. D. Inman in good faith and with reliance upon the statements and encouragement of the mayor and council of the City of East Portland began and completed the erection of a large sawmill, planing-mill, and lumber plant upon said premises, and erected and built wharves and docks in the Willamette River abutting upon said premises, and proceeded to fill said Stephens slough, and to erect such other buildings as were necessary and convenient for the general manufacture of lumber and duly completed the erection of such lumber-mill in the year 1890, and erected its buildings irrespective of the existence of any streets, and in good faith, and expended in the erection of said lumber-mill and plant large sums of money, and that during the period between September, 1889, and the present date, the said defendants and Inman, Poulsen & Co., a corporation, occupied all of said premises now occupied by them openly, continuously, notoriously and adversely, and has excluded the public from said premises, and during all of said time conducted the business of a sawmill under claim of right, and believing in good faith that no street easement whatsoever existed within the boundary of the premises now occupied by them. That valuable and extensive improvements were made by said defendants and by said Inman, Poulsen & Co. over the whole of said premises having the appearance of streets as shown on the map of Stephens' Addition to East Portland, and erected buildings across the same, and made fills with thousands of yards of materials and built adjuncts to said

lumber-mill and plant, and erected landings and platforms and all things necessary and convenient for the use of a large lumber manufacturing plant.

"(12) That on the 27th day of November, 1906, the whole plant of Inman, Poulsen & Co. and the defendants herein was completely destroyed by fire. Said fire occurred at night and created great excitement in the City of Portland, and that it was generally known and published within the said city that said plant had been destroyed, and it was generally known and published, and was known by the officials of the City of Portland, that said Inman, Poulsen & Co. were rebuilding a larger and more complete plant than the plant destroyed by fire as aforesaid, and that they continued the building of said plant without objection from the City of Portland or its officials, and have completed on said premises in controversy a sawmill and lumber plant with the greatest capacity of any sawmill in the world, and ever since have conducted on said premises said lumbering plant and sawmill, and have occupied the whole of said premises hereinafter described with notice to all of the officials of the City of Portland; that the defendant Inman-Poulsen Lumber Company has continued to enlarge its plant, and has succeeded to all of the interests of its predecessors in title, and now has upon said premises a lumbering plant and sawmill of an actual annual capacity of 151,000,000 feet of lumber, and that it is necessary for the practical and proper operation of said plant to occupy the whole of the premises now occupied by them, and that during the operation and extension of defendants' plant the defendant Inman-Poulsen Lumber Company has completely filled said Stephens slough with over 1,500,000 cubic yards of material at an expense of approximately $400,000, and within said slough lying west of Grand Avenue the defendants have filled in said slough with 900,000 yards of material, and that to open up any street, through the premises now occupied by defendant Inman-Poulsen Lumber Company would destroy their plant, and make

it impossible to run the same as a sawmill or lumber manufacturing plant. * *

"(14) That said defendant Inman-Poulsen Lumber Company and its predecessors have erected on said premises its improvements and made said fills at an expense of over $800,000. That they employ about 500 men, and possess a large industry of great benefit to the City of Portland and the State of Oregon.

"(15) That there is no public need or necessity of any streets through the said premises hereinafter described and occupied by said defendant Inman-Poulsen Lumber Company. That said defendants now occupy and are in possession of the following described premises, to wit: (1) Beginning at a point sixty (60) feet north of the northwest corner of block B, in Kern's Addition to the City of Portland, Multnomah County, Oregon, and running thence east along the north line of Division Street to the west line of Grand Avenue; running thence north along the west line of Grand Avenue to the southerly line of the right of way of the Oregon & California Railroad Company, now occupied by the Southern Pacific Company; from thence running northwesterly along the southerly line of said right of way to the north line of Lincoln Street if extended westerly; thence west to the low-water mark of the Willamette River; thence southeasterly along the low-water mark of the Willamette River to the intersection of low-water mark with the north line of block A, Kern's Addition, if extended; thence east to a point thirty (30) feet south of the point of beginning; thence thirty (30) feet north to the point of beginning, saving and excepting therefrom a small portion of said real estate and premises in the northerly and westerly corner thereof now occupied by the Portland Railway, Light & Power Company as a power and lighting plant; and saving and excepting the right of way of the said Portland Railway, Light & Power Company across a portion of said premises. (2) The wharfage rights and the right to wharf out from said premises at right angles with the harbor line to the established

harbor line of the Willamette River, and the right to erect and maintain docks, wharves, and other structures between the harbor line of said Willamette River and the low-water mark thereof; and all riparian rights and privileges incident and appurtenant to said real estate. (3) Beginning at the northwest corner of block D, in Kern's Addition to Portland, in Multnomah County, Oregon, running thence north 67.67 feet for a point of beginning; running thence east to the west line of East Eighth Street; thence north along the west line of East Eighth Street to the Oregon & California Railroad Company's right of way, now occupied by the Southern Pacific Company; thence northwesterly along the southerly line of said right of way to the east line of Grand Avenue; thence south along the east line of Grand Avenue to the point of beginning. That said premises above described include that portion shown on the said map of Stephens' Addition to East Portland as blocks 13, 27, 28, 29, 30, 34, 33, 32, 31, 48, 47, 49, 50, 53, 52, and 51, the same being included in descriptions No. 1 and No. 2. That description No. 3 includes the following premises shown on said map of Stephens' Addition, as follows: 70, 71, 90, 69, and that part of 68, 72, and 89 lying southerly and westerly of the Oregon & California Railroad Company's right of way, now owned and operated by the Southern Pacific Company. That to open any streets through said premises would entirely destroy the defendant Inman-Poulsen Lumber Company's improvements of the value of $1,000,000 and would work irreparable injury and mischief to said defendants, and would be a great wrong and of benefit to no one.

"(16) That from 1870 to 1873 the Oregon & California Railroad Company occupied a right of way through said premises without any reference to streets, and established the grade of said railroad track by making a cut through said premises without reference to any streets and have operated trains thereon between said dates. That James B. Stephens occupied said premises and the whole thereof from June 8, 1869,

to February 15, 1888, openly, notoriously, continuously, and adversely without regard to any public right or easement therein for said period.

"(17) That the defendants will suffer irreparable injury and injustice if any streets are ordered opened up through said premises, and the rights of defendants in said premises have grown up with the encouragement of the city officials of the cities of East Portland and Portland, and are of more persuasive force than the rights of the public in or to any part of the said premises as long as said premises are used for a lumber manufacturing plant and for the adjuncts thereto, and the City of Portland is estopped from opening up any streets through said premises or undertaking to harass or annoy the said defendants, their successors or assigns, in the peaceable possession of said premises for the purposes for which they are now used or may be used as a lumber manufacturing plant.

"(18) That on the 24th day of November, 1908, the City of Portland caused six complaints to be filed against defendants Inman-Poulsen Lumber Company and Johan Poulsen, accusing them of violating said ordinance No. 7,130, and that in each case said defendants were arrested and were charged with willfully and unlawfully maintaining and keeping buildings and structures standing within and upon certain public streets, and that said alleged streets were within the bounds of the premises heretofore described. That said defendants appeared in said actions in the municipal court of the City of Portland, County of Multnomah, State of Oregon, and defended the same, and, the title to said real estate being involved, each of said actions were certified to the Circuit Court for further proceedings. That on the 9th day of April, 1909, said defendants were charged with violating an ordinance providing that no street should be filled or improvement made without a permit from the city, and a complaint was filed against said defendants in the municipal court of the City of Portland, Multnomah County, State of Oregon, making such charges against the de-

fendants, and that said defendants appeared in said court and defended said action in said court, and the title to real estate being involved the same was certified to the Circuit Court for further action, and that the same was duly set down for trial on motion of the City of Portland for the 5th day of January, 1911, and that the said City of Portland dismissed the same complaint. That in the month of January, 1911, 11 complaints were filed in the municipal court for the City of Portland, County of Multnomah and State of Oregon, charging defendants with obstructing alleged streets, and that defendants were arrested and appeared in said actions in said court, and the title to real estate being involved all of said actions were certified to the Circuit Court for further proceedings. That all of said actions are still pending against these defendants for the obstruction of alleged streets through the premises heretofore described, and none of the same have been brought to trial, and they are now pending and have not been dismissed. That all of said actions involve the same questions of title as are involved in this suit, and that the plaintiff has had ample time and opportunity to bring said actions on for trial and has neglected to do so."

Upon the trial the court made the following decree: "This cause coming on to be heard this day upon motion of defendants for a decree in accordance with equities of the cause and the findings of fact and conclusions of law heretofore made and entered herein, plaintiff appearing by Wm. C. Benbow, deputy city attorney, and defendants appearing by Geo. S. Shepherd, their attorney, and it duly appearing to the court after hearing the testimony adduced at the trial in this cause, together with arguments of counsel, that the defendants are entitled to a decree as prayed for, it is therefore ordered, adjudged and decreed that defendants Inman-Poulsen Lumber Company is the owner and in the lawful possession of the following described

premises situated in Multnomah County, State of Oregon, to wit: Beginning at a point sixty (60) feet north of the northwest corner of block B, in Kern's Addition to the City of Portland, in Multnomah County, Oregon, and running thence east along the north line of Division Street to the west line of Grand Avenue; running thence north along the west line of Grand Avenue to the southerly line of the right of way of the Oregon & California Railroad Company, now occupied by the Southern Pacific Company; from thence running northwesterly along the southerly line of said right of way to the north line of Lincoln Street, if extended westerly; thence west to the low-water mark of the Willamette River; thence southeasterly along the low-water mark of the Willamette River to the intersection of low-water mark with the north line of block A, Kern's Addition, if extended; thence east to a point thirty (30) feet south of the point of beginning; thence thirty (30) feet north to the point of beginning, saving and excepting therefrom a small portion of said real estate and premises in the northerly and westerly corner thereof now occupied by the Portland Railway, Light & Power Company as a power and lighting plant, and saving and excepting the right of way of said Portland Railway, Light & Power Company across a portion of said premises. The wharfage rights and the right to wharf out from said premises at right angles with the harbor line to the established harbor line of the Willamette River, and the right to erect and maintain docks, wharves, and other structures between the harbor line of the said Willamette River and the low-water mark thereof, and all riparian rights and privileges incident and appurtenant to said real estate. Beginning at the northwest corner of block D, in Kern's Addition to Portland, in Multnomah County, Oregon; running thence north 67.67 feet for a point of

66 Or.—7

beginning; running thence east to the west line of East Eighth Street; thence north along the west line of East Eighth Street to the Oregon & California Railroad Company's right of way, now occupied by the Southern Pacific Company; thence northwesterly along the southerly line of said right of way to the east line of Grand Avenue; thence south along the east line of Grand Avenue to the point of beginning. It is further ordered that after defendant Inman-Poulsen Lumber Company, its successors and assigns, shall cease to use said premises as a lumber manufacturing and sawmill site for the uses incident or connected therewith, that the public shall have street easements through said premises in accordance with the map or plat of Stephens' Addition of record in the office of the county clerk of Multnomah County, Oregon. It is further ordered that as long as said defendant Inman-Poulsen Lumber Company, its successors or assigns, shall use said premises as a site or ground for a sawmill or lumber manufacturing, planing, or dressing plant that the City of Portland be and hereby is estopped and restrained from claiming or undertaking to assert that any public easements shall exist within the bounds of said premises and that defendants are entitled to the peaceable possession of said premises as long as defendants, their successors, heirs or assigns, shall use said premises as a site or ground for said or kindred purposes. It is further ordered that defendants recover their costs.''

Both parties appeal.                AFFIRMED.

For appellant, the City of Portland, there was a brief over the names of *Mr. Frank S. Grant,* City Attorney, and *Mr. William C. Benbow,* Deputy City Attorney, with an oral argument by *Mr. Grant.*

For respondents there was a brief and an oral argument by *Mr. George S. Shepherd.*

Opinion by MR. CHIEF JUSTICE MCBRIDE.

1. This case was tried before Hon. HENRY E. MCGINN, who was born and has lived all his life in the vicinity of the property in dispute; and his familiarity with its location and the conditions existing upon the ground admirably qualified him to understand the testimony offered.   A comparison of his findings of fact with the testimony satisfies us that he found correctly; and it only remains for us to decide whether the legal conclusions drawn by him from these facts are fairly deducible therefrom.

2. We think the city is estopped from claiming any right to use the streets in controversy.   Their legal existence was a matter of grave doubt when defendants located their mill upon the premises.   They did not go as trespassers or uninvited guests, but at the urgent solicitation of the city authorities of the City of East Portland, who were anxious to secure the location of the immense plant defendants proposed to erect within their boundaries.   When defendants inquired in relation to the supposed streets, they were told by the mayor that Stephens, the original proprietor of Stephens' Addition, had so muddled the situation with plats that it was doubtful whether any legal streets existed; that, if there were any, they were of no use to the city; and that they would never be claimed by the city.   Several of the blocks occupied a deep slough with banks more than 30 feet high and having an oozy mud bottom, which rendered it difficult to bridge even with piling, and which effectually obstructed travel for a great part of the distance on the north and northeast.   West of this slough was a tract of unplatted

land, so that on the north it was seemingly impracticable for the little City of East Portland to bear the enormous expense of opening streets which, after passing through the property now occupied, would terminate in the Willamette River. Streets running westerly toward the river, so far as here in controversy, would pass through the property of the defendants. All the property now occupied by defendants, except the slough, was at the time defendants entered into possession of it inclosed by a fence and had been used by its owners, Clinton and McCoy, as a baseball ground, from which the public were excluded except upon the payment of admission. With the exception that Stephens had filed a plat and delineated lots and blocks upon it, and had sold land by lots and blocks, there was nothing to distinguish the tract in question from any other unplatted land. In 1885, long before the defendants came into possession of the property, the City of East Portland established all street grades, but did not establish any grades through this particular tract, although establishing them all around it; and neither the city of East Portland, nor the City of Portland since the consolidation, has ever established any grade upon the alleged streets within the tract in question. This neglect to establish grades, coupled with the representations of the mayor and councilmen, no doubt tended to induce defendants to believe that the city either did not intend to accept the dedication of that part of the plat upon which defendants were requested to erect their plat, or that the city did not consider it had any right to those portions of the streets embraced within the tract in controversy. Acting upon the requests and representations made to them by the city authorities, the defendants proceeded to erect their mill, and to begin the work of filling up the malaria-breeding slough on the north side of their

property. The city authorities have stood by all these years, and have permitted them, without protest, to enlarge their plant, to fill up the slough, and to make it safe, dry land. They have at great expense filled the slough where Grand Avenue crosses it, leaving it open and unobstructed for public use. They have expended about $800,000 in building and equipping one of the largest sawmills in the world; a mill employing 500 hands, and confessedly a great benefit to the community. There is not one rule of morals for a municipality and another for an individual. Should a private citizen request and induce another to enter upon his premises under assurance that he would never be disturbed, and stand by and, without protest, see him spend three-quarters of a million dollars in improvements relying in good faith upon the request made and the representation put forth, he would be spurned from the courtroom if he attempted to regain possession of the property. Judge McGINN showed a robust sense of justice when he said upon the trial of this case: "Dr. Lane admitted that there was no present necessity or use for these streets, and everybody else will admit that. And if the City of Portland, in my judgment, were to undertake after these years to put the Inman-Poulsen Company out of there, they would be guilty of a great wrong. I am about as strong a man along the lines of municipal ownership as you will find, but right is right; these people were there; they went in there when there was no use for streets and they built up a great manufacturing plant, a plant that has been a great benefit to the people of the east side. It would be a crime for the City of Portland to undertake to dispossess these people after they have been there the number of years they have been." There is no reason to suppose that the open-

ing of these streets is necessary now or will be in the near future.

The witnesses for plaintiff were T. M. Hurlburt, Joseph Buchtel, P. Kelly, Mayor—now Senator—Lane, and George H. Hymes, all old residents of Portland and familiar with the situation; and they all practically agree that there is not at this time any necessity for the opening of these streets. It is apparent that to open them would destroy the greatest single industry in the City of Portland. The sole pretext for this suit is that the plaintiff wishes to establish its right to the streets.

3. As the statute of limitations does not run against the city, and as the improvements upon the property are practically complete, it is difficult to see how the city would be in a worse position ten years from now than it is at the present time. A fair sample of the reasons given for destroying this great industry appears in the testimony of Mr. Cellars, who, when the question of opening these streets was being mooted in the council, asked a councilman who was agitating the proposition what reason there was for opening them. The reply was: "I might want to go down to the river and spit sometime." This case comes fairly within the rule laid down in *Schooling* v. *Harrisburg,* 42 Or. 494 (71 Pac. 605, 9 Mun. Corp. Cas. 705); *Oliver* v. *Synhorst,* 48 Or. 292 (86 Pac. 376, 7 L. R. A (N. S.) 243). It is contended that the final decision of the case last cited, reported in 58 Or. 582 (109 Pac. 762, 115 Pac. 594), overrules to some extent our previous holdings upon this subject; but such is not the case. We expressly recognized the previous ruling of this court, but declared that upon the facts disclosed upon the final hearing of that case plaintiff had not brought herself within them. In that case nobody sought out the plaintiff and besought her to build where she did,

nor was there any doubt as to the existence of properly dedicated and platted streets, whose location could have been determined by an hour's investigation. There was no long-continued possession and use of the street, and no great amount of money invested in the fence which occupied it. The good faith, enormous expenditure, and long and notorious occupation of the street which characterize this case was lacking in that one.

4. It is claimed by plaintiff that the estoppels against the city here discussed are not properly pleaded, but defendants have clearly and succinctly set forth all the facts constituting such estoppels by way of defense, and we think that, in the absence of a demurrer or motion to strike, they are sufficiently pleaded. Equity will not concern itself as to the lack of technical pleading of an estoppel, as such, when all the facts necessary to constitute such estoppel are pleaded and no objection is made as to the form of the pleading: *Carlyle v. Sloan*, 44 Or. 357 (75 Pac. 217).

5. We come now to the cross-appeal of defendants. The estoppels urged by defendants are well pleaded, and are abundantly proved, but they amount to no more than that the defendants were desirous of securing site for a sawmill. The authorities of East Portland were of the opinion that a sawmill at the place in controversy would be of benefit to the city, and of such a benefit that it would be of advantage to the city to waive all possible rights to the alleged streets in order to secure a sawmill at that location. The construction and maintenance of a sawmill was the motive for the assurances of the city that defendants would not be disturbed in the occupation of the streets. It is not conceivable that defendants would have been invited to occupy these streets for purposes connected with a livery-stable, a tannery, or a candy factory.

The estoppel should go no further than the purposes for which the acts and representations which induced them, and which were known by the defendants to have induced them, legitimately carry it. Therefore, the Circuit Court was right in limiting defendants' right to occupy these streets to the purposes for which it originally occupied them, namely, for purposes of a sawmill. It naturally follows that, when these purposes are accomplished, the city should be permitted to resume control of the streets.

The decree of the Circuit Court is therefore affirmed; and, as both parties have appealed and neither has prevailed here, neither party will recover costs or disbursements in this court.                    AFFIRMED.

MR. JUSTICE BURNETT dissents.