## WALL v. SALT LAKE CITY

No. 2956.   Decided October 30, 1917.   (168 Pac. 766.)

1. LIMITATION OF ACTIONS—STATUTE OF LIMITATIONS—APPLICATION TO MUNICIPALITY—STREET.   There is no bar by statute of limitations in Utah against a municipality, in respect to a public street within its boundaries.   (Page 605.)

2. ESTOPPEL—ESTOPPEL OF MUNICIPALITY—LAND AS PART OF STREET. Where claimants of property in a city petitioned the city council for the approval of a map whereby the ground was divided into lots and blocks, a street being represented as 66 feet in width, and the council, after investigation by the city attorney and by itself, authorized the city engineer to approve the map, and some time later the question of the claimant's title to the land was again raised and again referred to a new city attorney, who reported to the new city council that it had no authority to set aside its former action and was estopped from so doing, and plaintiff lent money on mortgage on the land, and subsequently the city assessed her thereon for taxes, the city was estopped to claim as a public street premises lying without the sixty-six-foot width of the street shown on the map.   (Page 607.)

3. MUNICIPAL CORPORATIONS—ACTIONS AGAINST—PRESENTMENT OF CLAIM—STATUTE.   Plaintiff, before suing defendant city to quiet title to premises claimed by the city as part of a street, for damages, and for injunctive relief, was not required to present her claim for damages to the city council, as provided in Comp. Laws 1907, sections 312, 313, the statute not applying where the principal relief sought is equitable, and the damage prayed merely incidental.[1]   (Page 607.)

[1] *Dahl* v. *Salt Lake City*, 45 Utah 544, 147 Pac. 622.

Appeal from District Court, Third District; *Hon. T. D. Lewis,* Judge.

Action by Nellie M. Wall against Salt Lake City, a municipal corporation.

Judgment for plaintiff. Defendant appeals.

AFFIRMED.

*H. J. Dinniny,* City Atty., *W. H. Folland* and *M. C. Davis,* Asst. City Attys., for appellant.

*Dey, Hoppaugh & Fabian* for respondent.

THURMAN, J.

The defendant, Salt Lake City, contends that Eighth South street in said city is 132 feet in width throughout its entire length. Respondent disputes this claim and contends that the street from Tenth East to Thirteenth East is only sixty-six feet in width, and that the remaining sixty-six feet claimed by appellant to be a part of the street is private property and belongs to the plaintiff. Title to this disputed strip of ground constitutes the subject-matter of this action.

Plaintiff was in possession of the premises under claim of title when the defendant, against her protest, entered upon the same and commenced to excavate the ground for the construction of a sewer, upon the assumption that it was part of the street, and therefore under the domination and control of the city. Plaintiff thereupon brought this action to quiet title, for damages, and for injunctive relief. Both the complaint and the answer indulge to an unusual extent in the statement of matters purely evidentiary, the substance of all of which, however, is to the effect that each party claims title to the property.

Plaintiff bases her claim upon divers mesne conveyances made by persons who occupied the property both before and after the townsite entry was made in 1871. These persons occupied the property in question, together with other land adjacent on the south, as a farm or pasture. The land was

inclosed during a large portion of the time from some date
prior to 1871 until 1891, when plaintiff's grantors platted the
same as a town site under the name of Fremont Heights, in
which plat Eighth South street is only sixty-six feet in width.
During all of the time prior to 1891, there is no substantial
evidence that the ground in dispute was used as a public
street. In fact, the evidence shows quite conclusively that the
physical and topographical conditions of the ground were such
as to preclude the possibility of using it as a street, especially
for vehicles or similar modes of travel. The ground was steep
and rugged, a large gulch several feet in depth occupied a
considerable portion of it, and a large canal crossed it, all of
which rendered it practically, if not entirely, unusable as a
public street. This is substantially the condition the ground
was in when plaintiff's immediate predecessors in interest
platted it and procured it to be adopted as an addition to the
city in 1891.

The defendant city bases its right to the premises in ques-
tion upon certain plats or diagrams found in the files of the
city and County of Salt Lake, which, however, do not appear
to be authenticated as official plats. One of the plats, called
plat F, is especially relied on by the defendant, because it is
claimed that it covers the ground in question and that it was
recognized by plaintiff and her predecessors in interest, with
its lots, blocks, and streets, as a plat of that portion of the
city prior to the town-site entry and since, and that plaintiff
is bound thereby. Defendant city does not contend, as we
understand it, that the city opened or used the ground in
question as a public street prior to the adoption of the Fre-
mont Heights addition, except by a general ordinance or reso-
lution in 1887 authorizing the opening of streets and removing
obstructions therefrom. But defendant city contends that,
the ground being platted as a public street some time anterior
to the entry of the town site in 1871, it was not necessary that
the same should be opened or used by the public at that time
in order to give the city title thereto. It contends, further,
that the action of the city in adopting and sanctioning the
Fremont Heights addition in 1871, whereby Eighth South

street between Tenth and Thirteenth East was limited in width to sixty-six feet and the strip of ground in question was recognized as private property, was ultra vires, illegal, and void. Being so considered by the city in 1912, it proceeded to assert its claim to the ground as part of a public street, entered upon the same to construct a sewer, and exercised the acts of dominion complained of by plaintiff in her complaint.

These are the main contentions of the parties as to the bases of their respective claims of title. Minor considerations in support of or against these contentions will be referred to, if material, later on in the course of this opinion. The case was tried by the court; judgment rendered for the plaintiff, declaring her to be the owner of the property, awarding her damages and injunctive relief. Defendant appeals and assigns many errors.

In our view of the case, many of the questions argued at great length by counsel for the respective parties need not be considered in detail, as the conclusion we have reached renders them immaterial and their consideration wholly unnecessary. Some of the questions thus presented are of great importance, and whenever a case is presented in which they or any of them, become turning points in the case they will then be of vital importance, and should receive the consideration which their importance demands.

Whether or not the ground in dispute was a platted street at the time the town site was entered, and whether or not it was platted at that time and recognized by persons conveying adjacent property, and whether or not occupants of the land, in presenting their claims to the probate court, by not claiming certain ground platted as streets, thereby abandoned any right they may have had or became barred by the statute of limitations, and whether or not the federal grant under which the town site was entered should be construed one way or the other, are questions which are not in the least degree controlling in view of the conclusion at which we have arrived. In our view the one question in this case which overshadows all others, and to which this opinion should be mainly directed,

is whether or not the defendant city is estopped by reason of its own conduct from now claiming title to the property in question. This being the case it is manifest that any serious consideration given to the questions above referred to would be entirely unnecessary.

The facts bearing upon the question as to whether or not the defendant is estopped are either admitted, or so conclusively established by the testimony as to place them beyond question. As before stated, prior to 1891 the ground in question, with other land adjacent on the south, was inclosed and used as a farm or pasture. In 1887, Kelsey and Gillespie, real estate dealers of Salt Lake City, purchased the land which had been inclosed, including the ground in question used as a farm, as above stated, and succeeded to whatever title the prior owners of the property had. The first known claimant was Ellsworth who sold to Clift in 1867; Clift sold to Goddard; Goddard to Cummings, and Cummings to Kelsey and Gillespie. Those were the persons who had claimed the property and used it for farming purposes. Kelsey and Gillespie conceived the idea of making the ground, consisting of some 45 acres, an addition to Salt Lake City, consequently, in 1891, they platted it into lots, blocks, and streets under the name of Fremont Heights with Eighth South street, the street in question, 66 feet in width the whole length of the town site.

The undisputed record shows that in August, 1891, Louis P. Kelsey, James K. Gillespie, and Kate B. Gillespie claimed to be the owners of the property in litigation, basing their claim upon mesne conveyances commencing prior to 1867; that on or about the 4th day of August, 1891, they petitioned the city council of defendant city for the approval of a map whereby the ground in question, with other lands adjacent, was divided into lots and blocks, also showing certain streets dedicated to public use, among which was Eighth South street represented as being 66 feet in width between the canal above referred to and Thirteenth East. Abutting on said street on the north side were blocks 2, 3, 4, 5, 6, and 7, platted as private property, the same being the premises in dispute in this action. Accompanying this petition and map was an abstract of title

to all the ground represented on the map, together with the affidavits of Goddard and Clift, previous owners of the property, to the effect that the property platted had been occupied since prior to 1867, and that the same had not been used for public highways, but had been inclosed with a fence and was under a state of cultivation. The affidavits also tended to show the impossibility of using the ground in question as a street because of its physical condition. A question being raised as to the title of petitioners to certain parts of the ground claimed by the city as public streets, the matter was referred to the city attorney, W. C. Hall, and after examining the abstract of title and affidavits referred to, on the 29th day of September next following, he reported to the city council that if the claim of the petitioners was true as to adverse possession then their title would be good, but not otherwise. Upon request of the petitioners the city council went upon the premises and made personal examination, with the view of determining the extent to which it had been occupied, and to acquaint themselves with the facts. Thereafter, on the 6th day of October following, the city council authorized the city engineer to approve the map. On the 24th day of March following, Kelsey and Gillespie, by letter to the city council requested grades to be established on Fremont Heights on some of the streets platted therein, among them being Eighth South street, upon which abuts the ground in question. The record shows that on the same day the request was granted by the city council. In April, 1892, the record shows that the question as to the title of Kelsey and Gillespie to the ground now claimed by the city as a public street was again mooted. The matter was again referred to the city attorney. Hon. E. D. Hoge, in the meantime, had succeeded Mr. Hall to that office. A new city council had also been elected. After a brief review of the matters already referred to, the city attorney reported to the city council, and gave his official opinion to the effect that the council had no authority to set aside its former action in relation to Fremont Heights and were stayed from so doing, whereupon the city council, by resolution, adopted the profile map above referred to. Prior to this, however, in March, 1891,

Kelsey and Gillespie, in consideration of $1, had executed a deed to Salt Lake City for certain interests in land claimed by them which was not included in the plat of Fremont Heights. Thereafter, in October, 1893, Kelsey and Gillespie borrowed from the plaintiff the sum of $3,000, and to secure payment of the same executed a mortgage on the said blocks 2, 3, 4, 5, 6, and 7, Fremont Heights, the premises in litigation. Thereafter, in 1900, Kelsey and Gillespie having failed to pay said indebtedness, the mortgage was foreclosed and the property sold. Plaintiff thereafter succeeded to the title. The record also shows that sales of lots as platted in Fremont Heights were made, some of them being parts of the very ground in dispute, and warranty deeds executed therefor. Some improvements were made thereon by leveling and filling in low places. Taxes, both general and special, were levied against the property of the plaintiff, and paid by her, on account of this very property, under threats by the city that unless they were paid the property would be sold.

These various proceedings, acts, and conduct on the part of the city, the plaintiff, and her predecessors in title, occurred between 1891 and 1912, at which time the city commenced to assume dominion over the property by the construction of the sewer hereinbefore referred to. There is some evidence also tending to show that after the grade of the streets in Fremont Heights was established Kelsey and Gillespie, the owners thereof, commenced to grade the streets, but did not complete the same owing to the difficulty at that time of obtaining money. It further appears from the record that, prior to loaning her money and taking the mortgage therefor, plaintiff was shown the plat of Fremont Heights and the premises in question, and the nature of the security fully explained. It appears that other lots were sold in Fremont Heights addition and residences constructed thereon.

From the foregoing it appears that twenty-one years elapsed after the first adoption of the plat of Fremont Heights before the defendant city entered upon the premises and commenced the work which finally culminated in the commencement of this action. The trial court after finding, in substance, the

foregoing facts, and many others not herein enumerated, found as a conclusion of law "that the defendant by its acts, conduct, and representations, as heretofore found, is estopped from setting up any claim whatsoever to said property or any part thereof for any purpose whatsoever."

Appellant vigorously challenges the validity of this conclusion of law and cites many authorities in support of its contention. The facts upon which the conclusion is based being true, as found by the court, the question to be determined is, Is the conclusion sustained by the facts, and is it correct as matter of law? It is not our purpose to review in detail all of the cases and authorities cited, because upon examination it will be found they are nearly all cases in which the facts are so dissimilar to the facts in the case at bar that by no process of reasoning, however ingenious, can they be made to apply to the present case. The cases and authorities cited and relied on by appellant are as follows: *Biglow* v. *Ritter,* 131 Iowa, 213, 108 N. W. 218; *City of Waterloo* v. *Union Mill Co.,* 72 Iowa, 437, 34 N. W. 197; *City of De Kalb* v. *Luney,* 193 Ill. 185, 61 N. E. 1036; *Shirk* v. *City of Chicago,* 93 N. E. 193; *Schultz* v *Stringer et al.,* 168 Iowa, 668, 150 N. W. 1063; *City of Sullivan et al.* v. *Tichenor,* 179 Ill. 97, 53 N .E. 561; Note to *Oliver* v. *Synhorst,* 7 L. R. A. (N. S.) 243; *Russell* v. *City of Lincoln,* 200 Ill. 511, 65 N. E. 1088; *Johnson* v. *City of Shenandoah,* 153 Iowa, 493, 133 N. W. 761; *Booth* v. *City of Prineville,* 72 Or. 298, 143 Pac. 994, L. R. A. 1915B, 1084; *Webb* v. *City of Demopolis,* 95 Ala. 116, 13 South. 289, 21 L. R. A. 62; *Harn* v. *City of Dadeville,* 100 Ala. 199, 14 South. 9; Dillon, Mun. Corps. (5th Ed.) vol. 3, section 1194; Elliott, Roads & Streets (3d Ed.) vol. 2, section 1189.

Upon examination of the foregoing cases it will be observed that nearly, or quite, all of them are based upon facts, as before stated, entirely dissimilar to the facts in the present case. They are cases in which the party contesting the right of the municipality relied on the doctrine of laches, prescription, adverse possession, statutes of limitation, or equitable estoppel by reason of long acquiescence in the conduct of the

parties claiming the property as against the municipality. None of them present a case like this, where the municipality, by its own affirmative acts, declarations, and conduct, misled the party, or induced him to believe that he had the right to rely upon the assurances which the municipality, after a long period of time, sought to repudiate to his injury. Indeed, it is hardly to be expected that many cases, if any at all, can be found in the published reports similar to the case at bar. It will be found upon examination that many of the cases above cited place emphasis upon the fact that the municipality did not do anything affirmatively to mislead the party claiming the right to the ground in dispute.

In support of its contention respondent cites the following cases: *Paine Lumber Co., Ltd.,* v. *City of Oshkosh,* 89 Wis. 449, 61 N. W. 1108; *Baldwin* v. *Trimble,* 85 Md. 396, 37 Atl. 176, 36 L. R. A. 489; *Weber* v. *Iowa City,* 119 Iowa, 633, 93 N. W. 637; *Reuter* v. *Lawe,* 94 Wis. 300, 68 N. W. 955, 34 L. R. A. 733, 59 Am. St. Rep. 892; *City of Davenport* v. *Boyd,* 109 Iowa, 248, 80 N. W. 314, 77 Am. St. Rep. 536; *Portland* v. *Inman Poulsen Lumber Co.,* 66 Or. 86, 133 Pac. 829, 46 L. R. A. (N. S.) 1211, Ann. Cas. 1915B, 400; *Davies* v. *Huebner,* 45 Iowa, 574; 2 Lewis, Eminent Domain (3d Ed.) section 854; *Schooling* v. *City of Harrisburg,* 42 Or. 494, 71 Pac. 605; *City of Los Angeles* v. *Cohn,* 101 Cal. 378, 35 Pac. 1002.

By far the greater number of the cases cited by respondent, like those cited by appellant, relate only to questions of adverse possession, prescription, statutes of limitation, and equitable estoppel by acquiescence on the part of the municipality, after a long lapse of time in which it is claimed by the party contesting the right of the municipality that it should be estopped, under the circumstances, from asserting that the ground is a public street. Very few of the cases show that the municipality did any affirmative act, or made any declarations, as a basis for the estoppel. In other words, the majority of the cases cited by respondent simply assert the contrary doctrine to that held by the cases cited by appellant under facts generally, if not entirely similar. Numberless cases on

both sides of the question, in addition to those cited by appellant and respondent, could be referred to, reviewed, and criticized, and only one conclusion could be finally reached, and that is, that in the character of cases cited the decisions appear to be in hopeless conflict.

The case of *City of Los Angeles* v. *Cohn*, supra, cited by respondent, is analogous to the present case to a certain extent. The last paragraph of the opinion sums up the principal facts together with the judgment of the court. We quote the same in full:

"We again detail the facts. Before the buildings were erected, with a knowledge and concurrence of the owner, the city instructed its agent to investigate and report to the council its rights in the land. The agent did investigate, and reported that the city had no claim or title. This report was received, placed on file, and entered in substance upon the minutes of the proceedings of the council. Nothing more was ever done by the city until this action was brought, a period of twenty years later. Upon the reception of the report, and its filing among the records of the city, defendant's grantors at once proceeded to the erection of a large and valuable building, and there it stands at the present day. A judgment for plaintiff would result in a destruction of this property. These facts are potent in themselves, and in our researches we have found no case which may so well be termed an 'exceptional case.' We have found no case which with better reason should form a 'law unto itself.' It is a case where an estoppel in pais is properly pleaded. For the foregoing reasons it is ordered that the judgment and order be affirmed."

The court, in the case referred to (101 Cal. at page 377, 35 Pac. at page 1002) says:

"We think, therefore, that mere adverse possession for the statutory period of a street or alley in a town which is a public highway cannot confer a title, but where such possession is accompanied with other circumstances which would render it inequitable that the public should assert its rights to regain possession, then, upon the principle of estoppel, a party may be protected against the assertion of right by the public, in order to prevent manifest wrong and injustice. For example, when the party, either under an honest conviction of right, has taken possession of a portion of one of the streets or alleys of the town, and expended his money in erecting buildings thereon without interference on the part of the public, these or perhaps other circumstances connected with adverse possession for the statutory period may afford good grounds for estoppel."

We confess that we are unable to see any difference in principle between a person who, under the circumstances, spends

his money in the erection of a building and one who expends his money upon the same assurance for the purchase of land which is the subject of controversy. The loss to a party of his improvements of the value of $3,000 or more is no greater injury to the person injured than the loss of any other investment of the same amount.

In *Reuter* v. *Lawe,* supra, there are some points analogous in principle to the facts in the present case. They are fairly well stated in the syllabus which reads as follows:

"The owner of land (Lawe) made and recorded a plat thereof, all being divided into lots and blocks, except a tract designated 'Public Square.' Twenty-seven years later he replatted this and other land, the land previously designated as 'Public Square,' being designated as 'Lawe's Park,' and, together with certain lots, being also designated as 'block 21.' An act passed seven years later, which incorporated a city embracing such territory, expressly adopted the plats, and provided for replatting the premises covered thereby. Proceedings were taken by or under the direction of the city council resulting in the recording five years later, of an official plat, by which the land previously designated as 'Lawe's Park' was subdivided into lots of block 21. Shortly after this, Lawe incurred some expense in taking out stumps and otherwise improving the premises. Soon after incorporation of the city, Lawe, by order of the city council built a sidewalk along one side of such park. The land designated as 'Public Square' was not taxed until the making of the second plat, but was taxed thereafter. During all the time Lawe continued in the actual possession of the premises, the same being actually inclosed and used by him throughout substantially the whole period. [The court] held that, notwithstanding any dedication by the first plat, the public was estopped to claim the land."

In 94 Wis. at page 306, 68 N. W. at page 957, in concluding its opinion, the court says:

"The adoption of the second plat by the act incorporating the city of Kaukauna in 1885, the requirement made by such city of Lawe to build a sidewalk along the side of the park, the construction of such sidewalk, the payment of taxes assessed annually on the property for a long period of years, and the improvement of the property at considerable expense, relying upon the long-continued recognition of private ownership by the municipality, in which all persons interested, so far as appears, acquiesced, with all the other facts and circumstances, show satisfactorily that, if a change of position on the part of the public be now allowed, such injustice and wrong will result as to warrant the application of the doctrine of equitable estoppel in pais to prevent such injustice."

There is one feature in a large number of the leading cases on both sides of this question of special interest in determining the law relating to the question under review. Both sides rely on the doctrine enunciated and declared by Judge Dillon, perhaps the greatest expounder of municipal law this country has thus far produced. Several of the cases above cited by both appellant and respondent refer for authority to the work of Judge Dillon on Municipal Corporations. What he has said upon the question in that work seems to be quite generally accepted as sound doctrine. We therefore, in attempting to arrive at a just conclusion in respect to what the law is upon this point, feel justified in referring to the same author upon which so many courts of the country seem to rely. After discussing generally the doctrine of adverse possession and prescription as applied to public streets, Judge Dillon, in 3 Dillon, Mun. Corps. (5th Ed.) section 1194, says:

"Upon consideration, it will perhaps appear that the following view is correct: Municipal corporations, as we have seen, are regarded as having, in some respects, a double character, one public, the other (by way of distinction) private. As respects property not held for public use, or upon public trusts, and as respects contracts and rights of a private nature, there is no reason why such corporations should not fall within limitation statutes, and be affected by them unless excluded from them. For example, in an action on contract or for tort, a municipal corporation may plead or have pleaded against it the statute of limitations. But such a corporation does not own and cannot alien public streets or places, and no mere laches on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public. It will perhaps be found that cases sometimes arise of such a character that justice requires that an equitable estoppel shall be asserted even against the public, but if so, such cases will form a law unto themselves, and do not fall within the legal operation of limitation enactments. The author cannot assent to the doctrine that, as respects public rights, municipal corporations are impliedly within ordinary limitation statutes. It is unsafe to recognize such a principle. But there is no danger in recognizing the principle of an estoppel in pais as applicable to exceptional cases, since this leaves the courts to decide the question, not by the mere lapse of time, but upon all the circumstances of the case to hold the public estopped or not, as right and justice may require."

The note referred to in the text cites numerous cases including most of those relied on by both appellant and respondent, and many others besides. We believe we are in accord with the law relating to this question as declared by Judge Dillon in the excerpt above quoted. As far as the statute of limitations and the doctrine of prescription and adverse possession is concerned, our statute (Comp. Laws Utah 1907, section 2866x) determines that question, and if that was the turning point in this case the judgment would have to be reversed.

There is no bar by statute of limitations in this state against a municipality in respect to a public street within its boundaries. As to whether the street in question here was a public street prior to the adoption of the plat of Fremont Heights, and if so whether or not it was abandoned or could have been abandoned at or prior to the time the plat of Fremont Heights was approved and adopted, it is not necessary to determine. These are serious questions, and it is more prudent to determine them when it becomes necessary in some particular case than it is to attempt to determine them now as purely moot questions. Should we determine them now most favorably to appellant's contention our judgment in the case would, nevertheless, have to be the same. The defendant city, with all the facts before it, with apparent caution and deliberation entered upon the investigation in 1891 as to whether or not the ground in question was within the limits of a public street. Every fact known to plaintiff's predecessors in title, Kelsey and Gillespie, relating to the title to this property, as far as the record shows, was disclosed to the city council when these gentlemen filed their petition. The council referred the matter to the city attorney. If there was any deception or duplicity practiced by Kelsey and Gillespie in respect to the matter it is not apparent in the record. At their request members of the city council went upon the ground and examined the premises. The city attorney made his report and, upon his report, the city engineer was directed by the council to approve the plat. Kelsey and Gillespie thereupon requested that grades be established by the city

on certain streets in the plat, and the city ordered that the grades be established. Work was then commenced by Kelsey and Gillespie on the street in question. The large gulch was partially filled up, but for want of the necessary funds at that time the work was suspended. The question of title to the ground as a street within a year or two thereafter again came before the city council. A new council had been elected. Very likely it conceived the idea that it ought to overhaul the work of its predecessor especially as to any doubtful public question. Again the matter was referred to the city attorney—a new one appointed by the new council. He investigated and reported that the city was estopped from attempting to undo what it had before done pertaining to Fremont Heights. The council then, by formal resolution, adopted the profile map of Fremont Heights and there the matter rested. It was after all this had happened and it had all been explained to the plaintiff that she loaned her money to Kelsey and Gillespie on the security of these lots which the defendant now claims as a public street. In addition to this the defendant went on for years and years assessing this property against the plaintiff as private property. Its revenues were increased by hundreds of dollars by the sums exacted from the plaintiff on the assumption of the defendant that the property assessed belonged to her. As far as the record disclosed not even the slightest pretense of an offer has ever been made to place her in statu quo. Not only this, other matters are entitled to consideration. Other lots in Fremont Heights addition were sold and residences constructed on the faith of this plat and the proceedings of defendant in respect thereto. The plaintiff herself, on that reliance, has sold some of the very ground in question and executed a warranty deed therefor. Her grantee has expended hundreds of dollars in improving the property so purchased on the faith of a good and sufficient title to the ground he purchased. After twenty years from the time the Fremont Heights addition was approved, and after all of these equities had intervened, the defendant comes upon the scene, and with no other excuse than that it had made a mistake twenty-one years before it commenced to tear up the ground,

and by force and arms exercise a dominion over this ground which for twenty-one years next previous it had recognized as private property. Recognized it not only by the plat it approved but by assessing it and enriching its own coffers by tribute exacted in the form of taxes. We believe, as was said by the court in *City of Sullivan* v. *Tichenor*, supra, cited by appellant, that:

"A municipal corporation can no more profit by fraud upon property owners than an individual and may be estopped by conduct."

Or, as said by Judge Dillon, in note one to the section above quoted, referring to the character of acts necessary to constitute an estoppel:

The principle of estoppel in pais has been applied to exceptional cases where the elements calling for its exercise appear to have been an abandonment of the public use for the prescriptive period, inclosure and expensive improvements, such as large and costly buildings, *or acts of the municipality inducing the abutter to believe that there is no longer any street, and the expenditure of money in reliance upon the acts of the municipality.* The absolute bona fides of the abutter or adverse possessor is a most important factor where an estoppel in pais is claimed. *The acts relied on must be of such character as to amount to a fraud, if the city were permitted to claim otherwise."* (Italics ours.)

We hold that this case falls within the exceptional class of cases referred to by Judge Dillon, and that it is the duty of the court to decide it as "right and justice require." It is our opinion that the city is estopped from claiming the premises in question as a public street.

This conclusion of the court practically disposes of the other assignments of error, except those relating to the question of damages. In addition to awarding plaintiff the property in dispute and injunctive relief, the trial court awarded her damages in the sum of $4,528.44, with interest thereon from May 14, 1914. Appellant contends that plaintiff was not entitled to damages, for the reason that she neither alleged in her complaint nor proved at the trial that she had first presented a claim for damages to the city council, as provided in sections 312, 313, Comp. Laws Utah 1907. In support of its contention appellant cites *Dahl* v. *Salt Lake City*, 45 Utah, 545, 147 Pac. 622, decided by this

court, in which it was held that an action for damages against a municipal corporation is barred unless the claim for damages is first presented to the city council as provided in the sections above referred to. The case cited by appellant was an action at law for damages. It sought no equitable relief whatever, and respondent insists that in that respect it is distinguishable from the case at bar. Respondent contends that the statute referred to does not apply to cases of this kind where the principal relief sought is equitable and the damage prayed for is merely incidental. In support of that contention respondent cites many cases, among which are the following: *Lamay* v. *City of Fulton*, 48 Misc. Rep. 153, 96 N. Y. Supp. 701, 702; *Sammons* v. *City of Gloversville*, 175 N. Y. 346, 67 N. E. 622; *Lonsdale Co.* v. *City of Woonsocket*, 25 R. I. 428, 56 Atl. 448; *Carthew* v. *City of Platteville*, 157 Wis. 322, 147 N. W. 375, and many other cases. Appellant has referred us to no case contravening this doctrine in cases of this kind, and as the reasoning of the courts in the cases referred to seems to be sound and uncontrovertible we are disposed to hold that it was not necessary to present the claim for damages to the city council before bringing this action.

Appellant, however, makes the further objection that the court erred in admitting certain testimony relating to the question of damages, and cites *Hempstead* v. *Salt Lake City*, 32 Utah, 261, 90 Pac. 397, in which case this court sustained an instruction in effect that the measure of damages was the difference between the market value of the property immediately before and after the improvement. In this case, as we read the record, that was, in effect, the character of testimony that was received by the court, and upon which it based its judgment. We find no error in the record. The decree of the trial court is affirmed, appellant to pay costs.

FRICK, C. J., and McCARTY, CORFMAN, and GIDEON, JJ., concur.